TILLINGHAST et al. v. RICHARDS, United States Marshal, et al.

(District Court, D. Rhode Island. July 27, 1915.)

1. CONSPIRACY ⟨key⟩43—To DEFRAUD UNITED STATES—CHARACTER OF ACTS—NECESSARY ALLEGATIONS.

Where an indictment charged conspiracy to defraud the United States by the removal of oleomargarine from a factory without payment of the tax thereon, it need not allege that the defrauding was to be accomplished by deceit, misrepresentations, or concealment, since the intent to defraud in such case is supplied by the allegation that the prohibited act was to be done unlawfully and knowingly.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 79, 80, 84–99; Dec. Dig. ⟨key⟩43.]

2. CONSPIRACY ⟨key⟩43—OFFENSE AGAINST REVENUE LAW—SUFFICIENCY OF INDICTMENT.

An indictment, found in the Southern district of New York, charging defendants with conspiring to defraud the United States by removing oleomargarine from the factory at Providence, R. I., without payment of the tax thereon, and alleging as overt acts that the defendants purchased palm oil in New York, its shipment, payment for it, etc., is bad, for a conspiracy must be found in the clause of the indictment which sets it forth, and cannot be enlarged by the overt. acts alleged, which, in the instant case had no necessary connection with the conspiracy, and while in cases of conspiracy an unlawful plan. may make unlawful, as parts of itself, what otherwise would be innocent acts, and while an overt act may be one innocent in itself, an indictment, charging conspiracy, which seeks to make an innocent act an ingredient of the offense, must allege a plan, including it directly or indirectly.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 79, 80, 84–99; Dec. Dig. ⟨key⟩43.]

3. CONSPIRACY ⟨key⟩43—OFFENSE AGAINST REVENUE LAWS—SUFFICIENCY OF INDICTMENT—AIDER BY ALLEGATION OF OVERT ACTS.

Where the indictment charged conspiracy to defraud the United States by removing oleomargarine from the factory at Providence, R. I., without payment of the tax thereon, allegations that the defendants purchased

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

palm oil in New York, etc., were too uncertain to render the indictment subject to construction as one for conspiracy to defraud by unlawful procurement or covert manufacture.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 79, 80, 84–99; Dec. Dig. ☞43.]

4. CONSPIRACY ☞43—INDICTMENT—OVERT ACTS.

Where an overt act alleged in an indictment charging conspiracy must be qualified by circumstances to make it relevant to the particular conspiracy charged, it should be pleaded with the circumstances which make it relevant.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 79, 80, 84–99; Dec. Dig. ☞43.]

5. CONSPIRACY ☞43—INDICTMENT—ALLEGATION OF OVERT ACTS.

Where the jurisdiction of the court depends solely upon an overt act alleged in an indictment for conspiracy, it must be alleged with all the definiteness and certainty of any other jurisdictional fact, and the connection between the overt act and the conspiracy charged must be made to appear specifically by necessary recitals.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 79, 80, 84–99; Dec. Dig. ☞43.]

6. CONSPIRACY ☞5—CRIMINAL LAW ☞113—VENUE—CONSPIRACY TO DEFRAUD UNITED STATES.

To the statutory offense of conspiring to defraud the United States, defined by Cr. Code, § 37 (Comp. St. 1913, § 10201), which prescribes, as necessary to the offense, not only the unlawful conspiracy, but that one or more of the parties must do an act to effect its object, an overt act, forming at least a step towards execution of the conspiracy, is an essential ingredient, and may be the sole basis of local jurisdiction.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 4; Dec. Dig. ☞5; Criminal Law, Cent. Dig. §§ 190, 232; Dec. Dig. ☞113.]

Habeas corpus on the petition of Frank W. Tillinghast and others against John J. Richards, United States Marshal, and others. Petitioners discharged.

Charles C. Mumford and John S. Murdock, both of Providence, R. I., for petitioners.

Harvey A. Baker, U. S. Atty., of Providence, R. I., for defendants.

BROWN, District Judge. The petitioners were indicted in the Southern District of New York for violation of section 37 of the Criminal Code, in that they unlawfully conspired to defraud the United States of sums to become due for internal revenue taxes, of 10 cents per pound on oleomargarine not free from artificial coloration.

A similar indictment for substantially the same conspiracy, and also an indictment charging the petitioners with the completed offense of defrauding the United States, had previously been found in this district. While under bail on the Rhode Island indictments the petitioners were arrested in this district, and the commissioner, in view of the previous indictments in this district, made application for leave to proceed, which leave was granted. After a hearing the commissioner found probable cause, and directed that each of the petitioners be held to bail for appearance before the District Court for the Southern District of New York, and upon failure to give bail issued warrants to the marshal for the commitment of the petitioners to the custody of

the keeper of the Providence county jail, and thereupon a writ of habeas corpus was issued to the marshal, whose returns show that the petitioners were held under the commissioner's warrants. The question now before us is as to the validity of the commitments.

Jurisdiction of the New York court to try the petitioners for the offense alleged in that indictment must rest either upon the fact that the conspiracy was actually formed in the Southern district of New York, or upon any overt act, or, to use the language of section 37, "any act to effect the object of the conspiracy," done in the Southern district of New York, by one or more of the conspirators.

The commissioner's finding of probable cause to believe that the petitioners had committed the offense as charged in the New York indictment, as appears by his opinion, was upon the ground that he was constrained to do so by the decision of the Supreme Court in Hyde & Schneider v. United States, 225 U. S. 347, 32 Sup. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614. The commissioner found as a fact that if the petitioners conspired anywhere they conspired in the city of Providence in the district of Rhode Island.

The United States now contends that the conspiracy was in fact entered upon in New York, and also that the crime is triable in New York, even if the conspiracy itself was not entered into there, on the ground that the locus of an overt act may be the jurisdiction for trial.

In order to determine: First, whether there was probable cause to believe that the conspiracy was in fact formed in New York; and, second, whether an overt act was committed in New York—it is necessary to examine the allegations of the indictment as to what was included within the scheme of the conspiracy.

The conspiracy charged is to defraud the United States at Providence, R. I., by the doing or procuring of an act made unlawful under the olemargarine laws and regulations in pursuance thereof, namely, to cause oleomargarine having artificial coloration to be unlawfully removed from the place of manufacture at Providence, R. I., for consumption and use, etc., without there being affixed coupon stamps representing payment of an internal revenue tax of 10 cents per pound, and without such tax having been paid or secured by any person.

While the conspiracy contemplated the production of a taxable commodity, this forms no part of the conspiring, or of what was to be done unlawfully; and the indictment nowhere alleges that the manufacture of the taxable commodity was to be done secretly or unlawfully.

[1] The indictment, it should be observed, is not for doing a lawful act by unlawful means, and therefore does not contain, and does not require, allegations to the effect that the defrauding of the United States was to be accomplished by deceit, misrepresentation, or concealment. If the indictment were based upon actual fraud by deception or concealment, it would, of course, be essential to allege this as a part of the conspiracy or plan, or of the means whereby the fraud was to be accomplished. Pettibone v. United States, 148 U. S. 197, 13 Sup. Ct. 542, 37 L. Ed. 419. The object of the conspiracy being to defraud the United States by an act prohibited by law, the intent to defraud is supplied by the allegation that the prohibited act was to be done un lawfully and knowingly.

Upon such an indictment it becomes unnecessary for the United States either to allege or to prove acts of positive deceit or concealment, and the defendant who manufactured his goods openly and lawfully would be liable equally with one who manufactured his goods covertly without paying a manufacturer's tax, or otherwise unlawfully.

[2, 3] As appears by the indictment, the unlawful object of the conspiracy, that is, the removal of the goods without payment of the tax, was to be performed wholly at Providence. Confusion seems to have arisen from the fact that the overt acts are not alleged consistently with the object of the conspiracy as defined by the indictment. The overt acts seem to be alleged upon the theory of defrauding the United States by a scheme which comprehended deception, or illicit manufacture, or concealment. The result is that we have allegations of some 49 overt acts, most of which are framed on the theory of a conspiracy to defraud by deception or concealment, though no such conspiracy is charged in the indictment.

An indictment similar to the New York indictment was sustained upon demurrer by an opinion of this court dated May 19, 1915, United States v. James S. Orr et al. (D. C.) 223 Fed. 220.

If this indictment is to be interpreted as the indictment in U. S. v. Orr was interpreted, it follows that the unlawful object of the conspiracy includes neither the procurement of materials for the manufacture nor the complete manufacture of the taxable product.

As was held by the Supreme Court in a recent case, Joplin Mercantile Co. v. United States, 236 U. S. 531, 35 Sup. Ct. 291, 59 L. Ed. 705, February 23, 1915, the plan of the conspiracy must be found in the clause of the indictment which sets it forth. It cannot be enlarged by the overt acts alleged. Even if it could be so enlarged, the allegations of overt acts are entirely too uncertain to enable us to read this indictment as for a conspiracy any part of which was deceit or concealment, or which involved, directly or indirectly, the unlawful procurement of materials, or unlawful or covert manufacture.

While it is possible that what are alleged as overt acts might be such as to a conspiracy of a different character, they are not in train or in causal connection with the unlawful object of the conspiracy here alleged.

As the object of the conspiracy, as expressly alleged, was to defraud the United States at Providence by means of removing from the factory at Providence oleomargarine upon which the tax had not been paid, anything which merely effects the object of manufacturing the taxable commodity cannot be regarded as an act to effect the object of this conspiracy.

Before the commissioner it seems to have been assumed that the indictment did in fact charge the doing of overt acts in New York. This assumption seems erroneous. The brief of the petitioners, shortly and without elaboration, now makes the point that the purchase of palm oil is merely "an adventitious circumstance, in no way essentially related to the alleged criminal purpose or its execution."

This point seems to be well taken and of chief importance, and particularly so in view of the recent decision in Joplin Mercantile Co. v.

United States, as well as of the decisions in United States v. Britton, 108 U. S. 199, 205, 2 Sup. Ct. 525, 27 L. Ed. 703; United States v. Greene (D. C.) 100 Fed. 941; Hyde et al. v. United States, 225 U. S. 347, 358, 32 Sup. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614.

While it is true, as has been held in many cases under the Sherman Act (Act July 2, 1890, c. 647, 26 Stat. 209), for example, the Reading Case, 226 U. S. 324, 33 Sup. Ct. 90, 57 L. Ed. 243, that an unlawful plan may make unlawful, as parts of the plan, what otherwise would be innocent acts, and while it also has been held that an overt act may be one innocent in itself, it is yet essential that an indictment or other pleading, which seeks to make an act, innocent-in itself, an ingredient of a criminal offense, or an act in pursuance of a criminal conspiracy, should allege a plan which includes it directly or indirectly. The object defined as the purpose of a criminal plot, and not some other undefined object, must be looked to in determining whether an alleged overt act is in fact an act to effect it. The purchase of palm oil, its shipment, payment for it, etc., may be acts to effect the object of manufacturing colored oleomargarine; but they cannot possibly effect the removal of that oleomargarine without the payment of the tax, unless by some connection which does not appear and which is not inferable from what is alleged. These are, for all that appears, nonculpable acts, from which no intent to defraud can be inferred, and which cannot support a finding of probable cause.

[4] The case of United States v. Donau, 11 Blatchf. 168, Fed. Cas. No. 14,983, decided June 2, 1873, has been many times cited as justifying the proposition that it need not appear upon the face of the indictment in what manner the act described would tend to effect the object of the conspiracy, and there is considerable authority to the effect that if any act is set forth and is alleged by the pleader to have been done pursuant to the conspiracy or to effect its object, this is enough, though there is no apparent connection between the overt act and the object. This seems unsound in principle, for relevancy is for the court and not for the pleader. If the act must be qualified by circumstances to make it relevant it should be pleaded, not simpliciter, but with these circumstances which make it relevant. See U. S. v. Ruroede (D. C.) 220 Fed. 211.

[5] Since the decisions in Hyde v. United States, and in Brown v. Elliott, 225 U. S. 392, 32 Sup. Ct. 812, 56 L. Ed. 1136, however, I am of the opinion that U. S. v. Donau, which was decided when the law was understood to be that the overt act was not a part of the offense and not a jurisdictional fact, and cases which have followed it, are of doubtful authority. Where the overt act and the conspiracy are in the same place, local jurisdiction may rest entirely upon the conspiracy. Where, however, the jurisdiction of the court depends solely upon the alleged overt act (see Brown v. Elliott, 225 U. S. 392, 32 Sup. Ct. 812, 56 L. Ed. 1136), it must be alleged with all the definiteness and certainty of any other jurisdictional fact; and certainly it should be made to appear by the allegations of the indictment that there was a connection between the act done and the plan. If a rule of pleading is adopted which permits a constructive presence to be

alleged in the same terms as an actual presence, and this upon the foundation of a bare allegation that an act apparently isolated was done in pursuance of a plan with which it has no apparent connection, then the prima facie effect of an indictment as evidence of probable cause is entirely destroyed.

Jurisdiction may be founded upon an overt act, as the hiring of a post office box in pursuance of a plan, for there is an apparent connection between act and offense.   See Brown v. Elliott, 225 U. S. 392, 32 Sup. Ct. 812, 56 L. Ed. 1136.   It would be quite another thing to allege, for example, in this case, the hiring of a post office box as an overt act, for this would be in no apparent connection with the alleged plan.   A pleader should not be permitted to allege isolated acts, and the court required upon his mere allegation that they were done pursuant to the conspiracy, and without the slightest idea whether this is true or not, to take the pleader's word, instead of himself seeing whether the act alleged was relevant or not.   In the present case, for example, it seems that the pleader is mistaken in his notion that the purchase of palm oil could possibly be an act to effect the unlawful removal of oleomargarine containing it from the factory at Providence. I am quite convinced, also, that the use of this palm oil in the manufacture of oleomargarine at Providence could not, in any way, effect the object of unlawfully removing it.   There are instances where the impossibility of the allegation is apparent on its face; but the rule, I think, is not altered if the act alleged is one which may or may not be an act to effect the object.   A charge of crime must not be equivocal. The court must find it in the facts alleged, and not in the pleader's conclusions as to logical connection of facts.

What we have said bears directly upon both grounds of jurisdiction asserted by the United States in favor of the commitments.   Oral evidence was adduced before the commissioner as to arrangements between one of the defendants and an oil merchant to ship palm oil to a fictitious address.   This is relied upon as a conspiring in New York. Possibly this may be conspiring; but it is not conspiring to defraud the United States at Providence by the unlawful removal of colored oleomargarine at Providence, which is the indictment before me.   These petitioners cannot be removed to New York to try them for conspiring to purchase palm oil or to manufacture or color oleomargarine secretly, for all this is outside this indictment, which is no evidence of probable cause that they have committed such other offense.

I find no ground for disturbing the commissioner's finding that, as a matter of fact, there was no probable cause to believe that there was any actual conspiracy in New York.   I am of the opinion, however, that he was not coerced by the decisions in Hyde v. United States and in Brown v. Elliott to find a constructive presence or a fictional presence in New York by reason of any allegations of overt acts, since only five acts alleged, to wit, acts committed at Providence, the removal of oleomargarine, can be regarded as acts to effect the object of the conspiracy.   The purchasing of palm oil, payment for palm oil, or shipment of palm oil, whether under a real or fictitious name, cannot effect the object of unlawfully removing oleomargarine from the factory at Providence.

It must be remembered that we are dealing here with a question of constitutional right. If the right to be tried in the place where the offense is committed is to be impaired by a fiction of constructive presence, the facts out of which the courts will, as conclusion of law, create that fiction must be set forth with certainty, and the fiction may not be based upon the arbitrary statement that an act was done in pursuance of a plan and to effect the object of that plan, when nothing in the nature of the plan or of the act done, or the object alleged, shows to the court the relevancy of the act to the preconceived plan or the object of that plan.

[6] Since the decisions in Hyde & Schneider v. United States, 225 U. S. 347, 32 Sup. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614, and Brown v. Elliott, 225 U. S. 392, 32 Sup. Ct. 812, 56 L. Ed. 1136, the overt act has become an essential ingredient of the statutory offense, and may be the sole basis of local jurisdiction. It must be something more than evidence of a conspiracy; thus a complete confession of a conspiracy would not be equivalent to an overt act, which must constitute execution, or part execution. Apparently it may be the act which completes the offense of defrauding, or an act so near the completion of the offense as to constitute an attempt, or an act so remote as not to amount to an attempt; but at least it must be a step towards execution. Whether a certain act was in pursuance of the conspiracy might, of course, depend entirely upon what the conspiracy was, and upon whether the parties conspired to accomplish their purpose by the means alleged. See Hyde v. United States, 225 U. S. 347, 375, 376, 32 Sup. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614.

To apply the doctrine of constructive presence to the place of intended execution of a plan, or possibly to the place of the doing of an act so near the completed crime as to constitute an attempt, may perhaps be justified as a useful fiction. To apply it to acts so remote in causal connection and so remote in place that they can neither effect the object of the conspiracy, nor constitute an attempt to effect it, is stretching the doctrine of constructive presence to its limit. The fiction that one is legally present, though really absent, is one which may be so applied as to give rise to the question asked by Chief Justice Marshall in United States v. Burr, 4 Cranch, 470, 490, Fed. Cas. No. 14,692a:

"To what purpose are those provisions in the Constitution which direct the place of trial, and ordain that the accused shall be informed of the nature and cause of the accusation?"

The division of the court in Hyde v. United States and Brown v. Elliott indicates that, even in cases where the alleged overt acts fall within the conspiracy charged, the fiction of constructive presence was worked to its limit. The possible abuse of such a doctrine was recognized in the majority opinion. But surely, if an indictment may be so loosely framed that the court is unable to see that the act alleged to be done was in the relation of cause and effect with the thing planned, then it may be called upon to base a fiction that one who is really absent is legally present upon an isolated fact having no apparent tendency to effect the object of the conspiracy, upon faith in the pleader's

bare allegation that it has such connection. This is not permissible, for the question of relevancy is to be determined by the court upon facts alleged, and not by the pleader's opinion.

When a specific offense had been fully committed it was formerly the general practice to indict for that offense under the specific section applicable thereto, and to affix to a conviction the specific penalties prescribed. The practice has grown up, however, of indicting not for the commission, but under the blanket section 37, when the parties are merely ordinary joint offenders, and where, if there is a joinder in an unlawful project, the real dangers from conspiracy, considered as a crime by itself, are little greater than in the case of an individual offender. To do this as a means of changing the venue for trial from the place of commission of the offense to the place of commission of some small preparatory act seems a substantial invasion of constitutional right.

If the mere purchase of one of the lawful ingredients of a taxable commodity in a place remote from the place of manufacture is to be regarded as amounting to a step towards defrauding the government, or of committing an offense against the United States, then we should bear in mind that the pure food laws, as well as revenue laws, prescribe offenses against the United States which would ordinarily be done by persons in association and, therefore, conspirators. A bottle of misbranded medicine might give a prosecuting officer a very wide range in the selection of place for trial.

The purchase of materials which, like palm oil, may be lawfully used in the manufacture of a lawful taxable product, are merely steps in the creation of a taxable product, and are preliminary to the creation of an obligation to pay money. This is the creation of the condition upon which it may become possible to defraud the United States; but this is sharply separable from the defrauding which is contemplated after the obligation shall arise.

A tradesman may be defrauded in the creation of a debt to him, since he simultaneously parts with the consideration, and every step whereby the debt is created is in furtherance of the fraud. The United States cannot be defrauded by the production of a taxable commodity, since it parts with no consideration. There is no similarity in the cases.

Unlawful manufacture, or moonshining, may be a step toward the accomplishing of fraud; but lawful manufacture, even if secret, as many manufactures are, is not a step towards the deprivation of the United States of sums of money.

Even if we assume a plan which involves from the outset a scheme of voluntarily creating a debt to the United States for which it surrenders nothing by way of consideration, and a deprivation of the United States of that debt when it shall be created, no innocent step toward the creation of a new right in the United States to receive sums of money should be regarded as an act "to effect the object" of depriving the United States of that money.

But whether this be true or not, and whether or not it would be possible to frame any indictment setting forth an extensive plan which could make the purchasing of oil, butter, salt, cream, or palm oil used

in oleomargarine an overt act or step towards defrauding, yet, under well-settled rules of law, this indictment which defines a conspiracy to do a specific unlawful act, whereby the United States is to be defrauded, and contains no averment of anything which can amount to an overt act done in New York to effect the purpose defined by the indictment, renders inapplicable the decisions of the Supreme Court in Hyde & Schneider v. U. S. and Brown v. Elliott.

The United States contends that upon habeas corpus the questions presented are not open. Greene v. Henkel, 183 U. S. 249, 22 Sup. Ct. 218, 46 L. Ed. 177, cited on the last page of Henry v. Henkel, 235 U. S. 219, 230, 35 Sup. Ct. 54, 59 L. Ed. 203, and Tinsley v. Treat, 205 U. S. 20, 27 Sup. Ct. 430, 51 L. Ed. 689, seem to justify the present consideration and decision of the questions discussed.

Orders will be entered discharging each of the petitioners.