MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE, v. FOX.

4-7650                                          188 S. W. 2d 300

Opinion delivered June 18, 1945.

*Thomas B. Pryor, H. L. Ponder* and *H. L. Ponder, Jr.,* for appellant.

*C. E. Yingling* and *C. E. Yingling, Jr.,* for appellee.

SMITH, J. Appellee, J. E. Fox, for a number of years prior to May, 1943, owned and operated a farm located three miles south of Augusta on the White River. He had built on this farm a mound for the protection of his livestock during the annual high waters of the river, but in May, 1943, there was a flood of unusual proportions which inundated this mound, and made it necessary for appellee to remove the livestock assembled on this mound. Appellee's son, Ola, resided on and operated the farm, and was apprised that the weather bureau had given warnings of a high water of unusual proportions, but these had not been heeded and the livestock had not been removed to higher ground, reliance being placed on the mound for the protection of the livestock. Ola realized that the mound would be covered with flood waters, and so advised appellee, his father, who went to Augusta on May 15 and chartered a barge on which to load and remove the livestock. To reach the mound with the barge it was necessary to pass through a drawbridge over the river, which bridge was owned and operated by appellant railroad company.

The bridge was built so that the span extending over the channel of the river could be turned to allow vessels to pass. The center of this span rested upon a pier, and the span turns upon a series of wheels, and at the same time is moved on cogs which proceed around a set of teeth on top of the pier. These cogs are directly on top of the stone work of the pier. There is a track there for the running of the wheels, which stand about twenty-two inches above the track. The power to turn the span is furnished by an engine located in an engine-room on top of the pier, and to one side of the floor of the bridge.

On May 15, appellee applied to O. G. Speers, the bridge tender, to have the bridge opened, but was told that, on account of the stage of the river, it would endanger the safety of the bridge. Speers called the district superintendent, whose office was in Poplar Bluff,

and was advised by that official that the division manager of the railroad would be there the next day to see if the bridge could be safely opened, and directed Speers not to open the bridge until the arrival of that official. On the following day, May 16, this official with the railroad road master arrived and appellee renewed his request that the bridge be opened. After a conference between these railroad officials, the conclusion was reached that it would imperil the safety of the bridge to open it.

These officials, and others who testified at the trial from which is this appeal, stated that the flood waters had covered the piers of the bridge and that the drift wood in the river might have gotten in the cogs of the machinery, in which event it would have been difficult, if not impossible, to have closed the bridge, and all train movements would have been suspended.

Mr. C. L. Izard, the railroad roadmaster, testified that after May 15th, which was Saturday, there was a rise "of about nine inches," and one witness testified that in the conference about opening the bridge on May 16th one of the railroad officials remarked that while the bridge could not then be safely opened, it might have been safely opened on the 15th. There was testimony also to the effect that on May 15th there was no drift wood in the river which could have gotten into the cogs; but the testimony on this issue is conflicting.

Appellee was not allowed to pass through the bridge with his barge, and a number of head of livestock drowned, and this suit was brought and tried upon the theory that the stock would have been rescued and saved had the bridge been opened. This fact was not questioned and no contention was made that this was not true, and the case was submitted to the jury on the question whether it was negligence on the part of the railroad company to refuse to open the draw span of the bridge when requested to do so.

There was a verdict and judgment for appellee for a sum which is not excessive, if there is liability for the damages sustained. For the reversal of this judgment it

is insisted by appellant, railroad company, that a verdict should have been directed in its favor, and that the question of appellee's contributory negligence was not submitted to the jury. The basis of this last contention is that appellee had warning through the weather bureau that a great flood was coming, which he should have known would cover his mound, and that he had this warning in time to have removed his stock to higher ground.

The only instruction given upon this issue reads as follows:

"You are instructed that the fact that warnings may have been issued, advising the public generally, as to the stage the flood waters in White River would probably reach, is no defense in this case, and the plaintiff is entitled to recover notwithstanding such warnings, if you find from a preponderance of the evidence in his behalf that he requested defendants to open said bridge and was damaged by their failure or refusal to do so, unless you further find by a preponderance of the testimony on behalf of the defendants that said bridge could not be opened when requested in the exercise of reasonable care."

We think this instruction correctly disposes of that issue. Its effect is to tell the jury that appellee's failure to heed these warnings would be no defense if, notwithstanding the warnings, the stock would have been removed had the bridge been opened when that request was made. Other instructions defined the duty of the railroad company in regard to opening the bridge. One of these given at the request of appellant reads as follows:

"The jury are instructed that if you find from the evidence in this case that any attempt to open the drawspan at the time the plaintiff requested it, would have endangered the safety of those undertaking to operate it, or the maintenance of the defendant's line of railway for the safe passage of trains, or created a reasonable apprehension thereof, then the plaintiff would not be entitled to recover."

We think this instruction declared the law as favorable as appellant could ask, and under it the railroad

company was not required to open the bridge, if to do so would have endangered the safety of those undertaking to operate the bridge, or would have interfered with its maintenance, which was essential to the operation of trains which had to cross it. But even so, the testimony is sufficient to raise the question whether these results would have followed the opening of the bridge.

There was conflicting testimony as to whether the stage of the river was higher on May 15 when appellee first requested the opening of the bridge, than it was in 1937 or 1938 when the bridge was opened to permit appellee to pass through with a barge, on which he removed his livestock.

Appellant quotes from the chapter, Navigable Waters, 45 C. J., § 77, p. 461, as follows: "Subject to reasonable, local regulations and with due consideration of the exigencies of travel over the bridge, one operating a draw bridge is required to provide for the prompt and safe passage of vessels or floats through the draw, that is, to exercise reasonable care to avoid accidents or delay." But in the same paragraph the text proceeds to say: "The bridge must be placed in charge of persons competent to operate it, and must be equipped with lights and signals giving warning of its position in opening and closing. A bridge owner is liable in damages to the owner of a vessel injured by reason of negligence in failure promptly to open the draw, or to give timely signal or warning to the approaching vessel if for any reason the draw cannot be opened, the question of negligence being generally for the jury and the burden of excusing failure to perform these duties being on the owner of the bridge. Similarly the bridge owner is liable for injuries caused by the negligent operation of the draw, as where it is not opened far enough to permit an unobstructed passage, or where having been open it is closed prematurely."

A note to this text reads: "Where a vessel anchored in a river was drifting in a high wind in the direction of a drawbridge which the assistant engineer in charge of the draw refused to open on the ground that it could not safely be done, but it appeared that the draw could safely

have been opened and would have been if the chief engineer had been present, the municipality operating the bridge was held liable for an injury to the vessel caused by drifting against the closed draw. *Dorrington v. Detroit*, 225 Fed. 232, 138 C. C. A. 474.''

Here the jury might have found that the bridge could have been safely opened on May 15 when the request was first made, if the tender in charge had been willing to assume that responsibility, although it could not have been safely opened the following day after the arrival of the higher officials of the railroad company, who then correctly concluded that at that time the bridge could not have been safely opened.

We conclude, therefore, that a case was made for the jury, which was submitted under correct instructions, and the judgment must, therefore, be affirmed, and it is so ordered.