## UNITED STATES v. GREAT WESTERN SUGAR CO.

### No. 1426.

District Court, D. Nebraska, Lincoln Division.

June 18, 1929.

See, also, 39 F.(2d) 152.

H. B. Teegarden, Sp. Asst. to the Atty. Gen. (William J. Donovan, Asst. to the Atty. Gen., Ralstone R. Irvine and W. B. Watson Snyder, Sp. Assts. to the Atty. Gen., James C. Kinsler, U. S. Atty., of Omaha, Neb., and Phillip M. Aitken, Asst. U. S. Atty., of Lincoln, Neb., on the brief), for the United States.

Caldwell Martin and C. C. Dorsey, of Hughes & Dorsey, both of Denver, Colo., and Don W. Stewart, of Stewart, Stewart & Whitworth, of Lincoln, Neb., for defendant.

MUNGER, District Judge.

The information in this case undertakes to charge a conspiracy to violate sections 1 and 2 of the Sherman Anti-Trust Act, 26 Stat. 209 (15 U. S. Code §§ 1, 2 [15 USCA §§ 1, 2]).

A demurrer of the defendant to the information has been submitted, and also a special plea of the statute of limitations. The first count of the information charges, in substance, that the defendant and some of its officers engaged in a conspiracy in unreasonable and direct restraint of interstate commerce, that this conspiracy existed continuously through many years and to the filing of the information, and that the conspirators intended to obstruct and restrain the free flow of interstate trade and commerce in beet sugar carried on between Colorado, Montana, Nebraska, and Wyoming by other named corporations; that the restraint of

interstate commerce was to be effected by means and methods which are described. Many of these means and acts by which the conspiracy was to be effected are set forth and are alleged to have occurred more than three years before the filing of the information, and when they are regarded, as they should be (Knauer v. United States (C. C. A.) 237 F. 8) as particularization of the general charge of conspiracy, and as a charge of its existence and operation at the times stated, they are vulnerable to the plea of the statute of limitations.

The plaintiff contends that the information charges two acts that are clearly within the three-year period. The information was filed on February 6, 1929. The information alleges that the defendant operated a number of beet sugar factories in Colorado, Wyoming, and Nebraska, and that the Holly Sugar Corporation operated a number of such factories in Colorado, Wyoming, and Montana, and that the Holly Sugar Corporation announced in or about 1924 that it would build a beet sugar factory at or near Torrington, Wyo., and about 1925 it announced that it would build such a factory at Minatare, Neb. There are allegations to show that these factories, if built, would have drawn supplies of sugar beets from territory that otherwise would have supplied the defendant's factories, and that the announcements by the defendant of its proposal to build these factories was made to prevent the proposed building by the Holly Sugar Corporation. These announcements were made more than three years before the information was filed, but the government relies on the following allegations to show the existence of the conspiracy after February 6, 1926:

"Thereafter, in or about October, 1925, with knowledge of the aforesaid intentions and operations of the Holly Sugar Corporation with respect to its proposed plants at Torrington and Minatare, and for the purpose of forestalling, dissuading and preventing the completion and operation of the said factories, the defendant corporation announced, and put into effect, and sold sugar at, a reduction of fifty cents per one hundred pound bag of beet sugar in the States of Colorado, Nebraska, Wyoming, Montana, Missouri, Minnesota, North Dakota, South Dakota, Oklahoma, Iowa and Kansas and within the jurisdiction of this Court, to wit, within the County of Lancaster, in the State and District of Nebraska, said reduction being generally applicable throughout the territory in which the defendant corporation,

the Holly Sugar Corporation, and the American Beet Sugar Company were selling beet sugar in competition with each other, and such reduction being termed an 'advertising allowance.' Thereafter, during the nineteen days from October 23, 1925, to November 11, 1925, inclusive, while said reduced price was in effect, the defendant corporation sold, in the States of Missouri, Minnesota, South Dakota, Oklahoma, Nebraska and Iowa, a large quantity of beet sugar, to wit, 1,052,769 bags, at an average net loss per bag, to wit, 40.2 cents, and at a large total net loss, to wit, $423,280.75. On or about November 11, 1925, defendant corporation increased said 'advertising allowance' to 85 cents per 100 pound bag in the so-called 'high netting territory' hereinbefore described, and in the remaining territory affected by said 'advertising allowance' reduced it to 25 cents per 100 pound bag.

"On or about December 18, 1925, for the purpose of forestalling, dissuading and preventing the construction of beet sugar factories by the Holly Sugar Corporation at Torrington and Minatare, as aforesaid, the defendant corporation announced that the minimum guaranteed prices for sugar beets for 1926 would be increased $2.00 per ton over the prices which had existed during the four years next preceding said announcement, and did contract for and purchase beets throughout the following season at such increased prices. As the result of said increased minimum guaranteed prices as above described, many farmers who had been selling their sugar beets to the Holly Sugar Corporation and the American Beet Sugar Company ceased doing so, because of the inability of said companies to meet said increased prices and further hindered and weakened said companies in their ability to compete with the defendant corporation in the manufacture, transportation and sale of beet sugar in interstate commerce throughout the 'high netting territory' as hereinbefore described, all of which was intended by the defendants to be and was the direct and necessary result of their acts in announcing and adopting said increased prices.

"Thereafter, on or about January 17, 1926, and as result of the several operations by the defendant corporation hereinabove described, the Holly Sugar Corporation announced that it would not construct its factory at Minatare.

"Thereafter, on February 13, 1926, the defendant corporation withdrew the said 'advertising allowance' of 85 cents in said 'high.

netting territory' and of 25 cents in said remaining territory."

The government asserts that the allegations that the defendant increased the advertising allowance about November 11, 1925, to 85 cents per 100 pound bag in the "high netting territory" (described elsewhere in the information as Colorado, Wyoming, Montana, and Nebraska, and decreased it to 25 cents for 100 pound bag in the other territory, coupled with the allegation that on February 13, 1926, the defendant withdrew these allowances, are equivalent to a direct charge that this allowance was in effect all of the time from November 1, 1925, to February 13, 1926. The government also claims that the allegations that the defendant announced in December, 1925, that the minimum guaranteed prices for sugar beets for 1926 would be increased $2 per ton above former prices, and that the defendant contracted for and purchased beets throughout the following season (elsewhere described as the growing season of 1926), set forth an existing conspiracy after February 6, 1926. It may be conceded that some of these acts are alleged as occurring less than three years before the information was filed, but do they allege a conspiracy then in operation, when considered with the general allegations?

██ It is alleged that the defendant put into effect and sold sugar at a reduction of 50 cents per hundred pound bag for nineteen days from October 23, 1925 to November 11, 1925, at a loss of $423,280.75, "for the purpose of forestalling, dissuading and preventing the competition and operation" of the factories of the Holly Sugar Corporation. But as to these acts within the three-year period before the information was filed it is merely alleged that they were done by the defendant uncharacterized by any intent both as to changes made in November, 1925, and as to the withdrawal of the allowances on February 13, 1926. It is not alleged that these changes resulted in a loss to the company. These allegations do not charge any unlawful purpose, nor any purpose of the defendant in making these changes. In the absence of any charge of unlawful intention, it must be presumed that the changes in the amount of advertising allowances were made in the exercise of an honest discretion, and for legitimate business reasons.

██ The acts of the defendant in announcing an increase of $2 per ton for the sugar beets it should purchase in 1926, and in contracting for and purchasing beets at that price in 1926, are alleged to have been done "for the purpose of forestalling, dissuading and preventing the construction of beet sugar factories by the Holly Sugar Corporation at Torrington and Minatare," and the result is alleged to have been that many farmers who had formerly sold beets to the Holly Sugar Corporation and the American Beet Sugar Company (which had factories at Grand Island, Neb., Rocky Ford, Colo., and Las Animas, Colo.) ceased to do so, and weakened these companies' ability to compete with the defendant in the manufacture, transportation, and sale of beet sugar in interstate commerce in the "high netting territory," all of which was intended by the defendant to be the result of the adoption of the increased prices. It is not alleged that the defendant discriminated in the prices paid to those who sold it beets, anywhere. But it is not alleged that the defendant could not afford to pay the increased price which it offered, or that it suffered any loss by so doing. In the absence of apt allegation, it must be presumed that the defendant either could afford to pay the amount which it did pay, or, at least, that it exercised an honest judgment in offering that price. It would be going far to say that a dealer may not buy or sell at a uniform price that yields him a profit if the only objection is that he has the intention to obtain customers, who would otherwise deal, in interstate commerce, with competitors at a different price. Such advertising allowance and such price fixing would not be an unreasonable restraint of trade in interstate commerce. Standard Oil Co. v. United States, 221 U. S. 1, 31 S. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834, Ann. Cas. 1912D, 734.

The general allegation of the continuing conspiracy is limited by the allegation of the specific means by which it was to be effected. If it is alleged that A and B conspired to restrain interstate commerce continuously for ten years before the information was filed, to be effected by a local and undue price cutting for the first five years, it seems obvious that no sufficient charge of a conspiracy during the second five years is made. The allegations of the information of the means to be used in effecting the conspiracy during the three-year period before the information was filed do not show that the means were unlawful. Considering the information further, it charges that some of these acts done within the three-year period were done to prevent the completion and operation of the sugar factories proposed to be

built by the Holly Sugar Corporation at Torrington, Wyo., and Minatare, Neb. By another allegation it is charged that the increased price offered hindered and weakened the ability of the Holly Sugar Corporation and of the American Beet Sugar Company to compete with the defendant in the manufacture, transportation, and sale of beet sugar in interstate commerce, as was intended by the defendant. Obviously the increased price offered by the defendant for beets may have directly tended to cut down the amount of sugar that the other factories could procure and manufacture from beets drawn from a competitive field, unless met by the offer of similar prices by the other factories. If less beets were manufactured, less sugar might thereafter be sold or transported in interstate commerce, but this would be the direct result of the diminished manufacture or of diminished purchases, and only an indirect result of the prices offered for beets by the defendant.

The intention alleged in the general charge of conspiracy, and the intention alleged in the offers of the advertising allowances, and in the offers of prices for beets, when considered together, amount to a charge of an intention to prevent the purchase, and thereby of the manufacture, of sugar beets into sugar by rival companies, and do not amount to a charge of direct interference with interstate transportation or commerce. It has been settled by many decisions and upon full consideration of opposing views, that the manufacture of goods is not commerce, and that a combination to prevent such manufacture is not an interference with commerce. Hammer v. Dagenhart, 247 U. S. 251, 38 S. Ct. 529, 62 L. Ed. 1101, 3 A. L. R. 649, Ann. Cas. 1918E, 724; United Mine Workers v. Coronado Coal Co., 259 U. S. 344, 42 S. Ct. 570, 66 L. Ed. 975, 27 A. L. R. 762; United Leather Workers' International Union v. Herkert, etc., Co., 265 U. S. 457, 44 S. Ct. 623, 68 L. Ed. 1104, 33 A. L. R. 566; Industrial Ass'n v. United States, 268 U. S. 64, 45 S. Ct. 403, 69 L. Ed. 849; Coronado Co. v. United Mine Workers, 268 U. S. 295, 45 S. Ct. 551, 69 L. Ed. 963.

In the recent case of Utah-Idaho Sugar Co. v. Federal Trade Commission, 22 F. (2d) 122, the Court of Appeals of this circuit had under consideration a rivalry of sugar beet manufacturers which presented many of the questions of fact and law presented in this case, and the court held that the manufacture of sugar beets into sugar was not commerce, and that attempted interference of a sugar

manufacturing corporation with the construction of new factories presented a case beyond the power of the Federal Trade Commission to restrain, under section 5 of the Federal Trade Commission Act (15 U. S. Code § 45 [15 USCA § 45]), relating to unfair methods of competition in commerce.

The second count adopts most of the allegations of the first count, and charges that the defendants conspired to monopolize interstate commerce in beet sugar by excluding the rival firms. No intent of the conspiracy is alleged independently of this in this count, but a consideration of the allegations adopted from the first count leads to the conclusion that this count is also insufficient for the same reasons which have been stated as to the first count. The plea in bar presenting the issue of the statute of limitations is not inconsistent with the allegations of the information, and was not challenged by demurrer or other plea or answer.

Other questions have been presented, but for the reasons stated the demurrer will be sustained, and judgment will be entered for the defendant on the plea in bar as confessed.