### UNITED STATES v. McLAUGHLIN et al.

(District Court, D. Minnesota, Fourth Division. January 17, 1908.)

1. CONSPIRACY (§ 27*)—"OVERT ACT"—REQUISITES.

To constitute an indictable conspiracy there must be by one or more of the conspirators some overt act, which must be an act tending to carry out the object of the conspiracy or in some way tending to make it effectual, and if the conspiracy ceases without an overt act it would not constitute an offense, though when consummated it is the conspiracy rather than the overt act which constitutes the crime.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 38; Dec. Dig. § 27.*

For other definitions, see Words and Phrases, vol. 6, p. 5128; vol. 8, p. 7743.]

2. CONSPIRACY (§ 27*)—OVERT ACT—FRAUD.

Where defendants were charged with having formed a conspiracy to defraud several corporations engaged in selling merchandise, lumber, building material, etc., by mail, by means of catalogues, and it was al-

leged that the scheme or artifice to defraud was to be effected by the use of the post office establishment of the United States by soliciting and obtaining from such corporations catalogues and samples requesting price lists and estimates on spurious bills of lumber by falsely representing that defendants were desirous of purchasing such materials, etc., letters and postal cards sent through the mails by which defendants requested catalogues, prices, samples, and estimates, but in none of which was there any representation that the signer or any of the defendants intended to purchase such materials from the addressees, were insufficient to constitute an overt act required to make out a criminal conspiracy.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 38; Dec. Dig. § 27.*]

On Demurrer to Indictment.

The following is a copy of the charging part of the indictment, and the letters, postal cards, etc., claimed to constitute the overt acts:

The grand jurors of the United States of America within and for said district and division, in the name and by the authority of the said United States of America, upon their oaths, present, that on or about the 16th day of March, 1907, and prior to all the days and dates hereinafter mentioned, at the city of Minneapolis, in the county of Hennepin, in the state and District of Minnesota, in the Fourth division thereof, and within the jurisdiction of this court, Theodore S. McLaughlin, Leonard R. Welles, George P. Thompson, Elijah Hudson, James C. Melville, I. Nesbit Tate, Rufus B. Clark, R. B. French, whose true Christian name is unknown, Ralph Burnside, William J. Bruce, Willard G. Hollis, Stanley Moore, George C. Ingram, N. S. Darling, whose true Christian name is unknown, C. E. Greef, whose true Christian name is unknown, J. W. Lucas, whose true Christian name is unknown, O. M. Botsford, whose true Christian name is unknown, George H. Rogers, Arthur R. Rogers, and other persons to the grand jurors unknown, did, then and there unlawfully, wrongfully, and knowingly, conspire, combine, confederate, and agree together to commit the act made an offense and crime against the United States by section 5480 of the Revised Statutes of the United States and acts amendatory thereof, as follows, to wit, by then and there devising and intending to devise a scheme and artifice to defraud Gordon Van Tine Company, a corporation duly organized, created, and existing under and by virtue of the laws of the state of Iowa, the Waterman-Hunter Company, and the T. M. Roberts Cooperative Supply Company, corporations duly created, organized, and existing under and by virtue of the laws of the state of Minnesota, and certain other corporations created and existing under and by virtue of the laws of the state of Illinois, doing business at Chicago, Illinois, as follows, to wit: Chicago Mill Work & Supply Co., Sears, Roebuck & Co., Montgomery Ward & Co., Schaller-Hoerr & Co., South Side Lumber Co., Geo. Green Lumber Co., John Spry Lumber Co., Chandler Lumber Co., Street, Chatfield & Co., White River Lumber Co., Chicago & Riverdale Lumber Co., Chicago House Wrecking Co., to be effected by opening correspondence and communication with the said above-named corporations through and by means of the post office establishment of the United States, which said use and misuse of the said post office establishment of the United States was then and there a part of the said conspiracy; which said scheme was in substance and effect as follows, to wit:

"That the aforementioned corporations were then and there engaged in the business of selling lumber, millwork, and builders' supplies by means of what is commonly known and designated as the 'catalogue and mail order' plan and system; that the said mentioned merchandise, and the prices at which the same was being sold by the said aforementioned corporations, were described and set forth in certain catalogues and price lists then and there published by said corporations respectively; that said catalogues were then and there of the approximate value of one dollar, and the selling of the said merchandise so offered for sale by said corporations was effected by orders from the public transmitted by mail; that the said above-named Theodore S. McLaughlin,

Leonard R. Welles, George P. Thompson, Elijah Hudson, James C. Melville, I. Nesbit Tate, Rufus B. Clark, R. B. French, Ralph Burnside, William J. Bruce, Willard G. Hollis, Stanley Moore, George C. Ingram, N. S. Darling, C. E. Greef, J. W. Lucas, O. M. Botsford, George H. Rogers, and Arthur R. Rogers, and other persons to the grand jurors unknown, well knowing the said plan and system under and by which the said above-mentioned corporations were then and there selling their merchandise and conducting their business as aforesaid, should fraudulently solicit and obtain from said corporations, through and by means of the post office establishment of the United States, said catalogues and samples of the merchandise therein described, and in like manner request from said corporations estimates and prices on fictitious and spurious bills of lumber and building material by in each instance representing and pretending to said corporations that they the said persons aforesaid were desirous of and intended to make purchases of the said corporations, whereas in truth and in fact the said persons did not intend to make purchases of the said corporations and did not honestly and in good faith intend to enter into any business relations with the said corporations, but then and there by said means intended to defraud the said corporations out of the possession and value of their said catalogues and samples, together with the postage and stationery used in said correspondence, and the value of the time necessarily consumed by said corporations and their clerks in making estimates and prices upon the said bills of lumber and material, and so fraudulently induce the said aforementioned corporations to part with their said money and property without in any wise returning to them any equivalent; which said scheme and artifice to defraud as aforesaid, pursuant to said conspiracy, was to be effected by opening correspondence with said corporations by said persons aforesaid by means of the post office establishment of the United States."

The indictment then set out seratim a series of letters and postal cards, alleging over each one that the writer, in the city of Minneapolis, District of Minnesota, and in the Fourth division thereof, etc., did unlawfully, wrongfully, and knowingly deposit and cause the same to be deposited in the post office of the United States on the date it was mailed, for mailing and delivery through and by means of the post office establishment of the United States, on which the postage was prepaid, and addressed to the various addressees, as follows:

"Apr. 22—07.

"Gordon Van Tine Co., Davenport, Iowa.

"Gentlemen: Please send me samples and best prices on your prepared roofing. Also a paint catalogue and color card of paint for residence. Do you guarantee your paint? Our local dealers do.

"Very truly,                                    I. N. Tate.
"1700 Portland Ave., Minneapolis."

"Minneapolis, Minn. Apr. 26th, 1907.

"Waterman-Hunter Co., City.

"Dear Sirs: I wrote you sometime ago asking for a catalogue and as yet I have not received any. Will you please let me have one as soon as possible and oblige,                                    George Peake,
"Minneapolis, Minn."

"Minneapolis, Apr. 25th.

"Gordon Van Tine & Co., Davenport, Iowa.

"Dear Sirs: Please send me some of your samples of roofing, also your paint color card.

"Yours,                                    Chas. K. Stephens,
"17 North 10th St., Mpls., Minn.

"I sent for your catalogue but never heard from you."

"Minneapolis, Minn. 4—23—07.

"Messrs. Gordon & Van Tine & Co., Davenport, Iowa.

"Dear Sirs: As I am preparing to build, will you please forward to my address at your earliest convenience 1 sash and door catalogue, also samples of your paint and roofing.

"Thanking you in advance for these, I am,

"Yours truly, W. C. Moult,
"603 South 10th St., Minneapolis."

"Minneapolis, Apr. 26, 07.

"Waterman-Hunter Co., City.

"Dear Sirs: Received your catalog and would like to know how much one of your Homesteaders Cabins would cost, size about 12x20 feet. Are these cabins warm enough to live in in winter.

"Yours, Chas. K. Stephens,
"17 North 10th St."

"Minneapolis, 4—30—07.

"Waterman Hunter Co., City.

"Gentlemen: Please send me one of your mill work catalogues.

"T. S. McLaughlin,
"41 Groveland Terrace."

"Minneapolis, Minn., 4—30—07.

"Gordon Van Tine Co., Davenport, Ia.

"Gentlemen: Will you please send me a catalogue of sash and doors, etc.

"A. S. McLaughlin,
"2417 Aldrich Ave. South, Minneapolis, Minn."

"Minneapolis, Minn., 4-22-07.

"Gordon Van Tine Co., Davenport, Ia.

"Gentlemen: Can I get one of your sash and door moulding books. I buy quite a lot of them.

"Yours respt., A. S. McLaughlin,
"2417 Aldrich Ave. South, Minneapolis, Minn."

"1024 Hawthorne Ave., Minneapolis, Minn.

"Gordon Van Tine Co., Davenport, Ia.

"Dear Sirs: Would you kindly send me one of your mill work catalogues by return mail, and oblige,

"Yours truly, Will J. Morrow."

"Minneapolis, Minn. May 8th, 07.

"Gordon Van Tine Co., Davenport, Ia.

"Gentlemen: I would like very much to have one of your complete catalogues, as I am thinking of building this summer.

"Yours truly, R. I. Scheldrup,
"Address: 622 E. 16th St. Mpls., Minn."

"Toronto, S. D. May 2nd, '07.

"Gordon Van Tine & Co., Davenport, Iowa.

"Gentlemen: Please send me samples of 1, 2 & 3 ply roofing.

"Yours truly, Lars Hetland."

"Courtenay, N. D. Apr. 30th, '07.

"Waterman-Hunter Co., Mpls., Minn.

"Gentlemen: Please send me at your earliest convenience one of the 1907 catalogues No. 1 and oblige,

"Yours truly, E. A. Hubbell."

169 F.—20

To which indictment defendants severally demurred on the following grounds:

(1) That the said indictment does not state sufficient facts or grounds to constitute against the said defendants, or either of them, an offense against the United States, or an offense against any law of the United States, nor any offense.

(2) That as against the said defendants, or either of them, the said indictment is not direct or certain as regards the offense therein attempted to be charged.

(3) That as against the said defendants, or either of them, the said indictment is not direct or certain, as regards the particular circumstances of the offense therein attempted to be charged which are necessary to constitute a complete offense.

Charles C. Houpt, U. S. Dist. Atty., and Paul Ewert, Asst. U. S. Atty.

M. D. Koon, W. A. Lancaster, John Lind, W. E. Hale, Rome G. Brown, C. W. Somerby, L. L. Brown, Louis K. Hull, and C. J. Traxler, for defendants.

LOCHREN, District Judge (orally). I think that my mind is pretty well made up regarding this indictment. The defendants are charged with having formed a conspiracy to defraud several corporations of Iowa, Minnesota, and Illinois, and it is alleged that this scheme and artifice to defraud these corporations was to be effected by the use of the post office establishment of the United States. The circumstances under which this conspiracy was entered into between these defendants are stated. That is that these several corporations are engaged in what is known as the "catalogue and mail order business," in selling merchandise, including lumber, millwork, and other building material under the catalogue and mail order system, and that these defendants, well knowing the business in which these corporations were engaged, devised this scheme to defraud by soliciting and obtaining from said corporations catalogues and samples, and requesting price lists and estimates on spurious bills of lumber, and alleges the means that were adopted to perpetrate this alleged fraud; that is, by in each instance representing and pretending that they, the said defendants, were desirous of purchasing materials of these several corporations; and the indictment traverses these pretensions and representations, alleging that these defendants had no purpose of purchasing material of these corporations or of entering into any business relations with them. Then the indictment states the overt acts which are set forth in the indictment—several of them—one of them being a postal card signed by I. Nesbit Tate asking for samples, and another communication is signed by Theodore S. McLaughlin; both of these parties being defendants. There are other communications which are alleged to have been mailed by certain other defendants, although their names are not attached to the communications. I think that the indictment contains allegations that all of the communications were placed in the mails by one or more of the defendants.

I think that, when the indictment rests upon conspiring, confederating, and agreeing together, it is necessary that there should be by one

or more of the conspirators some overt act, and that if the conspiracy ceases without an overt act it does not constitute a crime, although when it is consummated it is the conspiracy rather than the overt act which is the crime. It seems to me that an overt act must be an act which has a tendency at any rate to carry out the object of the conspiracy, or in some way tends to make it effectual. It may not be sufficient of itself to complete the offense, but it should have a tendency to do so. I do not imagine that any letter which could have no tendency to mislead the corporations which are the alleged victims could be claimed to be an overt act at all. It must be an act having a tendency to effectuate the object of the conspiracy.

I have looked over all these letters, and it seems to me that there is none of them which embraces the fraud alleged. That is, there is none of these letters which contains anything that could be tortured or construed into a representation of any kind that the signer of the letter, or any of the defendants, represented that he intended to purchase any materials from the corporations or any one else. Some letters ask for catalogues which, according to the indictment, contained a description of the merchandise, with prices; others ask for samples. I think these are the two characters of these letters. But there is none of them that contains any statement whatever which, under any rule of construction, can be claimed to be a representation that the party writing intended to purchase from the corporations. Of course, it is well known that any party desiring to purchase goods would be interested in ascertaining where they could be got and the prices at which they could be obtained, and the mere fact that inquiries were made which would bring that information will not raise any presumption that there was an intention on the part of the party desiring the material to purchase from any particular person. It would be natural that there should be inquiry by the one desiring to purchase as to the character of the material and the prices, and that the intending purchaser should make such inquiries from many persons, so that he could be advised as to where to purchase and what character of material to purchase. And the mere fact that such persons should ask for catalogues or samples does not embrace any representation, in my opinion, that they desired or had made up their minds to purchase from any particular person or corporation. It seems to me that the overt acts alleged do not support the charges of fraud which are the subject of the alleged conspiracy, and that they are, immaterial; that there is not in the overt acts charged in the indictment anything germane to the subject of the alleged fraud.

I think the demurrer should be sustained.