## STATE v. WILLIAM BELL.

No. A-2395.  Opinion Filed July 23, 1917.

(166 Pac. 451.)

1. **APPEAL AND ERROR—Transcript on Appeal—Motion to Set Aside Information—Exhibits.** (a) The statutory designation of things which constitute the record and which can be brought up on appeal by transcript includes a motion to set aside an information or indictment.

   (b) A motion to set aside an indictment or information as contemplated in the foregoing includes all the exhibits attached, referred to, or made a part of said motion properly.

2. **INDICTMENT AND INFORMATION—Appeal—Motion to Set Aside Information—Discretion of Trial Court.** A motion to set aside an information on the ground that the proof offered at the examining trial is insufficient to establish the commission of the crime charged is addressed to the sound discretion of the trial court. On appeal by the state, therefore, this court will examine carefully all the facts and circumstances disclosed at the hearing on the motion, and determine whether or not the court abused his discretion. If not, the judgment of the trial court will be affirmed; if so, the judgment will be reversed, and the cause remanded for trial.

3. **INDICTMENT AND INFORMATION—Sufficiency of Evidence on Examining Trial.** A careful examination of the testimony attached to and made a part of the information discloses the fact that the trial court arrived at an erroneous conclusion as to the law applicable.

*Appeal from District Court, Rogers County;*
*T. L. Brown, Judge.*

William Bell was prosecuted on information for attempt to commit rape upon a female under 16, and from an order setting aside the information and discharging defendant, the State brings error. Reversed and remanded, with directions.

*W. M. Hall,* Co. Atty., and *R. McMillan,* Asst. Atty. Gen., for the State.

*D. M. Battenfield* and *Howard & Holtzendorff*, for defendant in error.

ARMSTRONG, J. This is an appeal by the State of Oklahoma from an order of the district court of Rogers county sustaining a motion to set aside an information and discharging the defendant in error from prosecution. A motion to dismiss the appeal was filed by the defendant in error, and the cause now comes on to be heard upon this motion and upon the merits. The charging part of the information is as follows:

"William Bell, then and there being, did then and there willfully, unlawfully, and feloniously attempt to commit a crime, a felony, to wit, rape, in the following manner and form, to wit: That he, the said William Bell on or about the 10th day of August, A. D. 1914, in said county of Rogers, did then and there willfully, violently, unlawfully, and feloniously attempt to rape, ravish, and carnally know one May Wilson, a female under the age of 16 years, and not the wife of him, the said William Bell, by then and there taking hold of the said May Wilson and throwing her on her back upon the ground, and then and there pulling up her clothing and taking hold of her private parts, and he, the said William Bell, by means of the aforesaid acts, did then and there intend to have unlawful sexual intercourse with her, the said May Wilson, but he, the said William Bell, failed to commit the crime of rape upon the said May Wilson and was prevented from the commission and perpetration of said crime of rape by the resistance of her, the said May Wilson."

The motion to set the same aside is as follows:

"Comes now the defendant herein, William Bell, and moves the court to set aside and quash the information filed in this cause by county attorney of Rogers county, Okla., for the following reasons, to wit:

"First. That said information is filed in said cause and based upon the evidence taken at a preliminary hear-

ing before the justice of the peace and upon the order of the said justice of the peace at said preliminary hearing, holding this defendant to answer to said charge before this court.

"Second. That the evidence taken at said preliminary hearing was not sufficient upon which to base any information charging the defendant with the offense sought to be charged in the information in this case, and was wholly insufficient with which to further proceed to prosecute this defendant.

"Third. That there was no legal or competent evidence in said case, or taken at said preliminary hearing to support the information filed in this cause, and that said information is filed without any legal or competent evidence upon which to base same.

"Fourth. The defendant herewith refers to the evidence taken at said preliminary hearing and duly filed with the clerk of this court, and makes same a part of this motion, the same as if same was attached hereto as an exhibit.

"Wherefore said defendant prays the court to review the transcript of said evidence, and upon a review thereof to hold that same is insufficient to support said information and enter its orders in this cause setting aside and quashing said information and holding same for naught."

The testimony which is made a part of the motion is as follows:

"May Wilson, being first duly sworn, upon her oath testified as follows, to wit:

"DIRECT EXAMINATION BY MR. HALL.

"Q. What is your name? A. May Wilson. Q. Where do you live? A. Collinsville. Q. How long have you lived in Collinsville? A. We have lived in Collinsville since, I think, it was in July. Q. This last July? A. We come this July. Q. This last month? A. The month of last July; a year ago this last July. Q. How old are you, May? A.

Fifteen. Q. When was you 15? A. December 1st. Q. Do you know William Bell? A. I just know him. Seen him along about two months. Q. Did you see him on or about the 10th of this month? A. 10th of this month; I don't know when the 10th was. Q. Do you remember the day of the week? A. It was on Monday. Q. How long ago has it been? A. Been about two months. Q. 10th was on Tuesday, was it not? A. Yes, sir. Q. Where did you see him about the 10th of this month? A. I seen him in Collinsville. Q. What place? A. At the depot. Q. That was when? A. 10th. Q. What day of the week was that? A. On Monday; no; on Tuesday. Q. Well, now then, before you saw him on Tuesday did you see him before that? A. Yes, sir. Q. Did you see him before that? A. Yes, sir; nearly every day: Q. Did you see him on or about the 10th? A. Yes, sir. Q. Where was that? A. I seen him down at the bridge on the 10th, early in the morning. Q. What day of the week was that? A. It was on Tuesday. Q. Well, now, when you saw him, where did you go? A. We went to town, and as we missed the 8 o'clock train, he said for me to go home and we would go on the 11 o'clock. Q. Now, that was on Tuesday? A. Yes, sir. Q. Well, did you see him before that day? A. Yes, sir; I saw him on Monday. Q. Now, where was that? A. It was down there by that little draw. Q. You say that it was on Monday? A. Yes, sir. Q. Was that one week ago today? A. Yes, sir; one week ago today. Q. Do you know what day of the month that was? A. It was on the 9th; yes, sir, it was on Monday; Tuesday was the 10th. Q. Now, to refresh your memory, May, wasn't Monday the 10th? A. Yes, sir; Monday was the 10th; Tuesday was the 11th. Q. Where did you see him on the 10th? A. On the 10th I saw him near the bridge about 4 o'clock in the evening. Q. Did you have any conversation with him? A. Yes, sir. Q. What did he say to you there? A. He wanted to know when he could meet me and everything like that. Q. Now, May, did you have any trouble there with him? A. At that time? Q. Yes; on Monday of that day? A. Yes, sir. Q. That was the 10th of August? A. Yes, sir. Q. Tell the

court what he did? A. Well, he tried to overpower me and tried to down me and everything like that. He jerked me down and jerked my wrist. It was nearly black the next day. Q. You say he jerked you down? A. Yes, sir. Q. Well, what did he then do? A. Well, he wanted to do what he oughten to do. Q. Well, what did he do? A. Well, he tried to take a hold of me and pulled me down, and he said he wanted to see me for a minute. Q. Well, tell the court what he did? A. He tried to take hold of me and pull my clothes up. Q. Were you standing up? A. I was standing up all the time? Q. What did he do to you? A. He throwed me down and got me all dirty and muddy. Q. How did he throw you down? A. Why, he got a hold of one hand and jerked me down, and I fell on my side. Q. Did he throw you on your back? A. He threw me down on my side. Q. When he threw you on the ground what did he say? A. Well, he says, 'I won't hurt you.' Q. Well, what do you mean by trying to get a hold of you? (Objected to by Mr. Howard: Let the witness tell what occurred. Objection overruled.) A. Well, he tried to get his hands on me, and he couldn't do it, although he did it after a while. Q. Well, what did he do? A. Well, he tried to pull my clothes up and and put his hands on me. Q. Well, where did he put his hands? A. On my privates. Q. What did he try to do? A. He tried to do everything he could. Q. Well, what did he do after throwing you down? A. Well, he took me in his arms and told me he wouldn't hurt me, and all that stuff, that nobody wouldn't know it, and what was the use; if we were going to get married, it would all happen again. Q. Well, what did he do to your private parts? A. Well, he done what he oughtn't to do. Q. What time of the day was that? A. It was about 4 o'clock in the evening, a little after 4. Q. Well, what county was that in? A. Rogers county. Q. State of Oklahoma? A. Yes, sir; down here.

"Mrs. C. W. Wilson, being first duly sworn, upon her oath testified as follows, to wit:

"DIRECT EXAMINATION BY MR. HALL.

"Q. What is your name? A. Mrs. C. W. Wilson. Q. Where do you live?' A. Here in Collinsville. Q. You are the mother of May Wilson, are you not? A. Yes, sir. Q. How old is May? A. May will be 16 the 1st day of December. Q. Sixteen the 1st day of next December? A. Fifteen years old she is. Q. What year was she born in? A. In 1898. Q. First of Decmber, 1898? A. Yes; 1st day of December. Q. Where were you on or about the 10th of this month? A. 10th I was home in bed sick. Q. Do you know what day of the week that was.? A. It was on Tuesday; I think it was Monday. Q. Where was May that day? A. Well, in the afternoon about 3 o'clock she went after a bucket of water. Q. How far did she have to go to get the water? A. Well, I suppose about three blocks or something like that. Q. Do you remember how long she was gone? A. Well, she was gone quite a long while. Q. What explanation did she make when she came back? A. Why, I said, 'Why did you stay so long for, Honey'—(Objected to by the defendant for the reason that any conversation had in the absence of the defendant would not be binding on him. Objection sustained by the court.) Q. Did you notice anything unusual about the appearance of May? A. Yes, sir. Q. What did you notice? A. Well, the back of her dress was muddy, and she had grass stains on the back of her dress. Q. Well, what is the nature of that stain? Mr. Howard: We object to that. The Court: Sustained. Q. What became of the dress she had on? A. Well, she washed the dress. Q. Well, what about the muddy stains on the dress? A. Well, some of the stains aren't out of the dress yet. Q. Well, where is that dress? A. Well, we just fetched the waist; we couldn't hardly get the stains out. Some of the stains are there yet, but they do not show so plain as they did. Q. Did you examine that dress today? A. Yes, sir. Q. Where is that dress? A. It is here, I think. Just the waist is all I brought. Mr. Howard: We object to the exhibition of that waist by the witness after testifying that it is not in the same condition as it was when the alleged offense was committed. (Ob-

jection overruled.   Defendant excepts.)   Q. Mrs. Wilson, is this the waist that May wore on the afternoon of the 10th of August, which was last Monday, a week ago to- day?   A. Yes, sir.   Q. Is this the waist that she wore when she returned?   A. Yes, sir; that is the waist.   Q. What was the condition of this waist when she returned from going after the water?   A. Yes; it was all muddy on the back and even on the hem of the skirt.   I don't believe that she wore it the next day.   I said, 'What is the matter with your dress, Honey?'   She said she fell down.   Q. Was there any other marks on it?   A. Just muddy and grass stains. (The state offers in evidence a waist just testified to, as being the waist that May wore when she went after a bucket of water on the 10th of August, 1914.   The defend- ant removes this objection.)   Q. What county and state, Mrs. Wilson, did this take place?   A. In the State of Okla- homa.   Q. In Rogers county?   A. Yes, sir; we live just outside of the city limits."

The motion to dismiss is based upon the proposition that the appeal taken by the state is brought up by tran- script, and not by case-made.   The argument and authori- ties cited disclose the fact that counsel's contention is based upon the proposition that the motion to set aside the in- formation and the exhibits which were made a part of the motion, by specific statements contained in the same, are not a part of the record included in the statutory definition, and therefore these matters cannot be reviewed on appeal by transcript certified by the clerk, but would have to be brought up by case-made, signed and certified by the trial judge, and duly authenticated as provided by law.

In this contention counsel are wholly in error.   The motion to set aside the information is as much a part of the record proper as would be a demurrer or any other plea filed in this case.   This court has never indicated the contrary in any of its opinions.   The testimony included

in the transcript was properly so included because it was an essential part of the motion to set aside the information, and the transcript of the record would not have been complete without including it. This appeal is properly lodged on the transcript, and there is no ground for dismissal. The motion to dismiss, therefore, is overruled.

We will now dispose of the case upon its merits.

The motion lodged in the trial court to set aside the information, stripped of all technicalities, undertakes to assert that there was no proof at the examining trial sufficient to warrant the examining court in holding the defendant in error, Bell, to trial before the district court. Again we cannot agree with counsel.

This proof discloses the fact that the prosecuting witness, May Wilson, was a girl about 15 years of age; that she was induced by defendant, Bell, to meet him in a ravine near the outskirts of the town of Collinsville. It is clear from the proof that she was not his wife; also that she was under the age of consent. It is equally clear that the evidence shows he committed the offense as charged in the information.

Numerous opinions have been written by this court involving sexual crimes against female children, including those attempted as well as completed. The crime defendant is charged with is that of attempt to commit rape upon a child. If the testimony is to be believed, and for the purpose of the motion to set aside the information it must be taken as true, there having been no contradiction of the same offered, the defendant should have been tried and convicted. The trial court was in error in sustaining the motion to set aside the information.

It follows that the judgment of the district court of Rogers county setting aside the information should be reversed, and this cause remanded, with directions to overrule the motion to set aside the information and proceed with the trial of this cause.

It is so ordered.

DOYLE, P. J., and MATSON, J., concur.