# UNITED STATES v. GREAT WESTERN SUGAR CO. et al.

## No. 327.

District Court, D. Nebraska, North Platte Division.

Jan. 30, 1930.

James C. Kinsler, U. S. Atty., Ambrose C. Epperson, Geo. A. Keyser, and Edson Smith, Asst. U. S. Attys., all of Omaha, Neb., John Lord O'Brian, of Washington, D. C., and Charles H. Weston and W. B. Watson Snyder, Sp. Assts. to Atty. Gen., for the United States.

Caldwell Martin and Clayton C. Dorsey, both of Denver, Colo., and Don W. Stewart (of Stewart, Stewart & Whitworth, of Lincoln, Neb.), for defendant.

WOODROUGH, District Judge.

Criminal information is filed by the government against the above-named corporation and certain of its officers and directors with conspiracy to restrain interstate commerce in beet sugar contrary to the Sherman Anti-Trust Act (15 USCA §§ 1–7, 15). The corporation defendant pleads in bar a former acquittal in the Lincoln division of this court; all defendants plead in bar former adjudication based on the same proceedings in that division; all present pleas to the jurisdiction; all plead the statute of limitations in bar; and

all assert by demurrer that the information fails to charge an offense. Separate briefs are submitted in support of the defenses, and the matter has been extensively argued. All the proceedings had upon the former information in the Lincoln division are brought before this court by the pleas and replications thereto. They appear to have involved the same elaborate study as is disclosed here, and the opinion rendered by Judge Munger (39 F. (2d) 149) shows the reasons why demurrer to the information was sustained and judgment entered for the defendant corporation on the plea (of the statute of limitations) in bar.

It seems that there are three competing companies that do practically all the beet sugar business in the territory comprised in the four states of Nebraska, Colorado, Montana, and Wyoming; this defendant corporation, the Holly Company, and another, this defendant being the biggest. The companies contract with farmers immediately adjacent to their respective factories to produce the beets which are manufactured into sugar in the factories, and the companies sell the sugar in interstate commerce at prices limited by the market price of imported cane sugar. The Holly Company announced that it was going to build and operate beet sugar factories at Torrington, Wyo., and Minatare, Neb., where the defendant already had factories. Thereupon the defendant throughout the territory mentioned raised its price to the farmers for beets and cut its price on sugar, with the result that the Holly Company built its proposed factory at Torrington anyhow, but only did some work on the one proposed at Minatare, and the proportion of business done by the respective companies was changed. The government says it was a price war on defendant's part to unlawfully restrain interstate commerce in sugar. Defendant corporation says it has to get its supply of beets for any of its factories from the territory adjacent thereto because neither the beets nor the industry can stand long hauls. Therefore, if a competitor proposes to cut off the necessary raw material from a factory, defendant has to give inducements to its public in order to hold on. It denies that it had any sinister design against the public interest or any intention to unreasonably restrain the commerce in beet sugar or to monopolize the same or to make wrongful discriminations and avers that the facts stated in the information are consistent with its innocence. The first question submitted is as to the effect of the proceedings and judgment at Lincoln.

The government says that there is a vital difference between its lawsuit at Lincoln and this one. There it charged the same acts of price warfare going directly to hinder the Holly Company from building factories at Torrington and Minatare that it does here, but it failed to charge that the acts were done with the specific intent of restraining interstate commerce in sugar. It asserts that the present charge of doing the acts with specific intent to restrain the commerce makes a different case out of it not barred by the former judgment. The undue brevity of the Sherman Anti-Trust Act compels a staggering verbosity in the application of it, but there's the nubbin as I take it. Government relies on the course of the litigation in the two Coronado Cases that went to the Supreme Court, 259 U. S. 344, 42 S. Ct. 570, 66 L. Ed. 975, 27 A. L. R. 762, and 268 U. S. 295, 45 S. Ct. 551, 69 L. Ed. 963. The first suit failed because hindering the operation of a coal mine there disclosed was a restraint on manufacture as distinguished from commerce, and so was not actionable under the Sherman Anti-Trust Act. In the second case the whole facts came out showing that the intended restraint, although imposed directly on the mining, was ultimately and effectively upon interstate commerce in coal. So here. The gist of Judge Munger's decision at Lincoln was that all the overt acts set out in the charge before him were vulnerable to the statute of limitations, except the two acts which are set up and relied on in this case; from that information it was inferrable that the two acts incorporated here were only intended to restrain manufacture and not commerce. Therefore that information, so far as it attempted to state a case within the three-year period, was demurrable, and otherwise it was barred. The complexity of the matter compelled analytical dissertation, but the simple fact is the information was bad and defendant discharged for that reason. There was neither jeopardy nor any adjudication to foreclose this information, if it is different and good. Justice Holmes said in Oppenheimer's Case, 242 U. S. 85, 37 S. Ct. 68, 69, 61 L. Ed. 161, 3 L. R. A. 516: "Of course, the quashing of a bad indictment is no bar to a prosecution upon a good one," and the remark covers the situation here. All the pleas based on the former proceedings should therefore be overruled.

Many cases are cited to the effect that, if the prosecution of defendant corporation were barred by the former judgment, the other defendants in this action would also be immune herein, and that is so in my opinion. But, as the corporation is not, neither are they.

I consider next the pleas of the statute of limitations. As stated, the government claims the information discloses a restraint on commerce to be accomplished by waging price war (the specified acts being so characterized by it). Necessarily, then, the duration of the conspiracy is coincident with the duration of the war which manifests and particularizes the existence and continuance of the conspiracy.

■ It appears that the price cutting on sugar was inaugurated late in October, 1925, and quit early in February, 1926. The information was filed October 30, 1929, so those acts of the price war were outside the three-year period. The boost in the price for beets was offered to the farmers in December, 1925, in the form of contracts for the 1926 beet crop to be signed up before the crop was planted. The offers were taken and the contracts made and the beets produced in reliance thereon. Some of the beets, it is true, were not delivered and paid for in this division in Nebraska until November, 1926, and within three years before the information was filed. But it is apparent the act of price warfare was not the acceptance of the beets or paying for them or slicing them up in the factories. It was the price boost by offer to contract at the excessive price and the contracting, and that alone, which could come under the characterization of price warfare. That was all done outside the three-year period. It is clear, therefore, that the war and therefore the conspiracy were done more than three years before the prosecution, and the conspiracy is barred. U. S. v. Biggs (D. C.) 157 F. 264; U. S. v. Biggs, 211 U. S. 507, 29 S. Ct. 181, 53 L. Ed. 305; U. S. v. McLaughlin (D. C.) 169 F. 302; Lonabaugh v. U. S. (C. C. A.) 179 F. 476. I find confirmation of this conclusion as follows: The government has concurrent remedy by prosecution and injunctional process. Suppose injunction had been asked to enjoin the company from taking the beets in November, 1926. Obviously the answer of an outraged community would be that the beet raising and hauling and delivery and payment as well as the slicing of the beets in the factory had nothing whatever to do with the price war. They were just things that transpired in the course of business after the war had been waged.

■ The next pleas are to the jurisdiction, and must be sustained upon substantially the

same ground. It is not claimed that the conspiracy was formed in Nebraska, nor is it localized here by any specific allegation, except that some of the beets were taken and paid for here. I am satisfied those acts neither furthered the conspiracy nor manifested it in existence or operation, and therefore the conspiracy is not shown to have come within the territorial jurisdiction of this court.

There remains the demurrer. It should be sustained on the authority of Utah-Idaho Sugar Co. v. Fed. Trade Commission (C. C. A.) 22 F.(2d) 122, and the cases there cited; and Bigelow v. Calumet & Hecla Mining Co. (C. C.) 167 F. 704. It is admitted that what defendants did was entirely lawful in itself. They merely had some bargain days in their line of business. The information shows that the market price of sugar in these United States is based on the price of imported cane sugar. Beet sugar cannot be sold higher than that, and admittedly the public will have to pay the cane sugar price, regardless of trade rivalries and acts of competition among the beet sugar companies. Obviously, then some bargain offerings by one of the beet sugar companies to its public could not possibly affect the basic condition of the commerce in the commodity. To assert here that defendants intended to restrain interstate commerce in sugar by their bargain day transactions is simply far-fetched. There is nothing in the picture of the industry presented that could rationally arouse fear or anticipation of any such a consequence. Of course, all bargain offerings by big dealers affect competitors, sometimes to the point of putting the weak ones out of business. But here is no suggestion of putting any one out of business. Looking closely at the information, there is not even a charge of actually affecting the amount of business done by the Holly Company. By reason of the bargain offerings, a larger volume of business went to defendant corporation, but at whose expense does not appear. I find no authority for the proposition that one who has such a proportionately small interest as this defendant has in the sugar trade can violate the Sherman Anti-Trust Act by bargain offerings to his limited clientele. The fact that price wars have sometimes figured in execution of conspiracies to restrain commerce is entirely beside the mark. Generalizations from those cases merely confuse. This particular situation is the one to consider here. It presents no monopoly in sugar nor attempt to get or keep one; no illegal acts; no possible injury to the public interest in sugar carried in interstate commerce either as to price or chance of discrimination or oppressive practices.

As it so appears to the court the demurrer should be sustained. Counsel to submit journal entry accordingly.