## JACOB TAKARSKE v. STATE.

No. A-10448.   Sept. 26, 1945.

(162 P. 2d 197.)

E. Moore, of Coalgate, and D. D. Brunson, of Ada, for plaintiff in error.

Randell S. Cobb, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Jacob Takarske, was charged in the district court of Coal county with the crime of murder; was tried, convicted of manslaughter in the first degree, and sentenced to serve 15 years in the State Penitentiary, and has appealed.

No question as to the sufficiency of the evidence has been raised, but a short statement of the facts should be given as an aid in the consideration of the issues which are presented.

The defendant, his wife, and the deceased, Anthony Antausic, were all of Polish descent. Although the defendant had been in this country for 40 years, he could speak only broken English and at the trial testified through an interpreter. The deceased was a bachelor who had lived as a neighbor to the defendant for many years. The defendant had become jealous of the deceased because of attentions which the deceased had been allegedly giving the defendant's wife. A few weeks before the homicide, the defendant had complained to the sheriff that the deceased was flirting with his wife and that he was going to kill him. The defendant was drinking at the time. This was in October, 1942. Shortly after night-fall on March 5, 1943, the deceased, Anthony Antausic, was found dead in the road not far from the defendant's home. The officers were notified and went to the place

where the body was laying. After they arrived there, the defendant walked up and said that he had killed the deceased. The defendant was intoxicated. The deceased had been shot in the back of the head with a 12-gauge shotgun. Defendant also stated that he had killed his wife and had put her under a little shedroom under the house. The defendant further stated that he killed the deceased because he had been playing with his wife for about 10 years. The deceased was 74 years of age; the defendant was 68 years of age. Both of the men were coal miners.

At the trial, the defendant testified that late in the afternoon of the day of the homicide he had come from town and noticed the gates on the west side of his pasture were open and that he went over to shut the gates. That when he went over to close the gates, he saw the deceased sitting on a culvert. That defendant said to deceased: "What, you going to do with me again as you do before? Are you going to continue coming to my place and give me trouble and doing with my wife as you have? Is you that kind of man?" That he told the deceased that if he was going to do that again that he was going to shoot him in the head. That deceased replied that he would cram that gun up his body. That deceased placed his hands in his pockets and defendant shot him. That the deceased was standing on a little bank and his foot slipped and he spun around and that was the reason the defendant shot him in the back of the head.

It was the theory of the state based on the circumstances surrounding the homicide that the defendant, being jealous of the deceased, had waylaid the deceased while he was on his way home and shot him in the back of the head.

It is first argued that the court committed error in giving instruction No. 18, which reads:

"Gentlemen of the jury, you are instructed that voluntary intoxication is not a defense to a crime charged, however, you may consider the same on the question of intent, if any, on the part of the defendant."

Counsel for defendant states that since the defendant did not interpose as a defense that he was drunk or that he was so drunk that he did not know what he was doing, the instruction should not have been given and that that was not an issue in the trial. However, under our law the court was charged with the duty of instructing the jury upon the issues presented by all the evidence of both the state and defendant whether requested by the state or by the defendant. Under the evidence of several of the witnesses, the defendant was intoxicated at the time of the homicide.

The next assignment of error is that the court erred in overruling the demurrer to the information for the reason that on the face of the information it is duplicitous because in one part of the information the defendant is charged with killing Anthony Antauic, and in another part of the information, the deceased is referred to as Anthony Antauick, and in still another part of the information, he is referred to as Anthony Antauik. Counsel for defendant are correct in their assertion that the information does have a variance in the spelling of the name of the deceased. However, the differences in spelling are so trivial that they could not have deceived the defendant or caused him to believe that he was charged with killing more than one person. The deceased was a Pole and evidently his name was hard to spell. More care should have been given to the spelling of this name

in preparing the information, but it is easy to see how certain letters in the name might be omitted or transposed where the name is so difficult to spell. There is not such a variance in the spelling as to confuse defendant or as would warrant an appellate court in saying that there was duplicity in the charge set forth in the information.

It is next contended that the court committed error in overruling the supplemental motion for new trial in which it was alleged that the jury was guilty of misconduct.

A motion for new trial was filed and overruled on April 19, 1943. On July 22, 1943, the defendant filed a supplemental motion for a new trial on the ground of misconduct of the jury, to wit, that during the trial of said cause one of the jurors departed from the other jurors and went on a mission of his own across the street from where the jury panel was being served their meals to a drugstore, and that, after the case had been submitted to the jury and as said jurors were leaving the courthouse, some person unknown to the defendant approached the jurors and handed one of them a piece of paper.

A hearing was held on this supplemental motion for a new trial. The daughter and son-in-law of the defendant testified that they were sitting in a car outside of the courthouse and saw the jury going into the courthouse in the custody of the bailiff. That they saw a man standing by the door and that he handed a note to the last man in the line, who took it, looked around, read it, and then went on with the rest of the jurors. They further testified that they reported this incident to one of the counsel for defendant at the time it happened.

Eleven of the twelve jurors who heard the case and both of the bailiffs testified in refutation of the testimony introduced by defendant on this point. The evidence showed that the twelfth juror was absent from the state and not available for presentation as a witness at the time of the hearing. Each of the jurors testified that no one handed them a note and that they did not see a note handed to any other juror.

The bailiffs testified that when the jury left the courthouse for a walk or to eat their meals that one of the bailiffs would walk in front and the other in the rear of the jury. They testified that at no time did they ever see any person hand a note to any member of the jury and none was handed to either of them. The bailiffs further testified that at no time did any person not connected with the jury talk to any of the jurors. One of the bailiffs testified that while the jurors were eating at a cafe, one of the jurors became ill and that he took him to the drugstore to get some medicine to relieve his stomach ache. That while he was gone with the juror, he left the other jurors in the cafe in the custody of the other bailiff. That while he had the juror with him no one talked to the juror or discussed the case with him in any manner. There was some testimony that some of the jurors played cards in one room while the rest of the jurors were asleep in another room, but the proof affirmatively showed that nobody was in either room except the jurors who were deliberating on this case.

In the recent case of Gallagher v. State, 81 Okla. Cr. 15, 159 P. 2d 562, 564, this court had under consideration the question of what constitutes a separation of the jury as contemplated by the statute. 22 O. S. 1941 § 857. It was there held:

"Where the proof shows that the jury is permitted to separate after the case has been finally submitted, the defendant is entitled to the presumption that such separation has been prejudicial to him, and the burden is on the prosecution to show that no injury could have resulted therefrom to the defendant.

"Where wife of juror talks to juror in presence of bailiff and only a few feet from remaining jurors, it is not such a separation as is contemplated by the statute. 22 O. S. 1941, § 857."

In the body of the opinion, it is stated:

"However, it has been held that permitting a juror to answer a proper telephone call from his family is not such a separation as is contemplated by the statute, 22 O. S. 1941 § 857, Lemke v. State, 56 Okla. Cr. 1, 32 P. 2d 331, nor the permitting of a juror to be taken to a toilet on the floor below the jury room, Welborn v. State, 70 Okla. Cr. 97, 105 P. 2d 187, nor where the jurors sleep in two different rooms where there is a bailiff in each room. Tillery v. State, 23 Okla. Cr. 226, 214 P. 198."

We do not think that the taking of the juror to the drugstore for medicine to relieve his ailment by the bailiff who did not allow him to converse with any one, while leaving the remaining jurors with the other bailiff, was a violation of the terms of the statute, which provides that the jury must be kept together and not permitted to communicate with any other person. 22 O. S. 1941 § 857.

On the issue as to whether a note had been handed to a juror as testified to by the daughter and son-in-law of the defendant, the trial court, after the hearing, determined that issue adversely to the defendant. This was an issue of fact for the determination of the trial court and there is ample evidence to sustain the finding made by the court on that issue. Under such circumstances, it has been the rule of this court to affirm the finding of

the lower court unless there is a clear showing of an abuse of discretion.

We find no errors of such a nature as to require a reversal of the judgment of conviction. The judgment of the district court of Coal county is accordingly affirmed.

BAREFOOT, P. J., concurs. DOYLE, J., not participating.