### DE LUCA et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. May 15, 1924.)

No. 99.

1. **Criminal law ⬅619—Indictments may be consolidated only where offenses might be charged in one indictment.**

   Rev. St. § 1024 (Comp. St. § 1690), authorizes the court to consolidate indictments for trial only when the offenses charged therein might have been joined in one indictment in separate counts.

2. **Criminal law ⬅619—Right to consolidate indictments not affected by severance.**

   The test of whether indictments may be consolidated is what appears on the face of the bills themselves, and the right to consolidate is not affected by the granting of a severance by which the defendants are to be separately tried.

3. **Criminal law ⬅619—Consolidation of indictments held error.**

   One indictment against nine defendants charged a conspiracy to defraud the United States by removal of opium from a bonded warehouse without payment of the duty thereon, and a second indictment against five defendants, charged a sale of opium in violation of Harrison Narcotic Act. The two offenses had no relation to each other, and the opium involved was not the same. *Held*, that a consolidation of the indictments for trial over objection was reversible error.

4. **Conspiracy ⬅27—Act committed after conspiracy ended cannot be charged as overt act.**

   An overt act must be one in furtherance of the conspiracy, and an act committed after the conspiracy has been successfully carried out and has ended cannot be charged nor proved as an overt act.

In Error to the District Court of the United States for the Southern District of New York.

Criminal prosecution by the United States against Morris De Luca and Themis Pavlou. Judgment of conviction, and defendants bring error. Reversed.

Otho S. Bowling, of New York City (Vine H. Smith, of New York City, of counsel), for plaintiff in error De Luca.

Samuel F. Frank, of New York City, for plaintiff in error Pavlou.

William Hayward, U. S. Atty., of New York City (Herman L. Falk, Asst. U. S. Atty., of New York City, of counsel), for the United States.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MANTON, Circuit Judge. The plaintiffs in error were tried on two indictments, which were consolidated. The first indictment charged the plaintiffs in error and seven other defendants with conspiracy to defraud the United States, by removing 20 cases of opium, on which import duty had not been paid, from a bonded warehouse, without payment of the duty; to procure export withdrawal permits by falsely representing that the opium was still in the warehouse and would be exported; to withhold the opium from exportation, concealing it in an unknown place, and distributing it throughout the United States. The overt acts charged are that the plaintiff in error Pavlou asked two other defendants to obtain a purchaser for 102 pounds of opium; one of the untried defendants received $500 from an unknown person; another paid $500 to Pavlou, and still another defendant went to the Anchor Warehouse, Inc., and delivered 102 pounds of opium to unknown persons; that the plaintiff in error De Luca delivered 102 pounds to one of the defendants; that the warehouse company delivered an unknown quantity of opium to an unknown person; that the plaintiff in error Pavlou signed a contract for the sale by Pavlou to one of the defendants of 16 cases of opium; and that 20 wooden cases were removed from the Anchor Warehouse, Inc., all of which was alleged to be a violation of section 37 of the United States Criminal Code (Comp. St. § 10201). The second indictment charged the sale, in a package which was not the original stamped package, or without a written order in the form issued by the Commissioner of Internal Revenue.

At the opening of the trial, on motion of the United States attorney, there was a severance in the conspiracy indictment as to the defendants, except the plaintiffs in error. A motion was then made to consolidate the two indictments; one of conspiracy and one of violation of the Harrison Act. The first indictment was against nine defendants, whereas the second was against five defendants. The motion to consolidate was granted over the objection and exception of counsel for the plaintiffs in error. No motion was made to sever in the case of the indictment under the Harrison Act (Comp. St. §§ 6287g–6287q).

There was testimony from which the jury could conclude that on July 5, 1921, 12 cases of opium arrived at the port of New York and were entered in the customs house by the plaintiff in error Pavlou. On January 4, 1922, 8 more cases arrived and were likewise entered by Pavlou. The duties were not paid, and all 20 cases reached the appraisers' stores. There they were weighed and found to contain a total net weight of 1,194⅛ pounds and were subject to a duty of $3 per pound. Thereafter the 12-case lot was delivered to the Anchor Warehouse, Inc., on July 22, 1921, and 8 more to the same warehouse on January 17, 1922. Thereupon De Luca originated the plan and carried it into execution whereby the opium in the warehouse, through the assistance of Pavlou, was taken out and sold, and stones and bricks were put in the cases and exported to Cuba and Mexico. The details of how this was done and the assistance rendered by the other de-

fendants is not of importance for our present consideration of the case. But it is sufficient to say that the duty was not paid and the opium was illicitly and unlawfully taken out. But it was not established during the trial that the 102 pounds of opium which were illegally sold were any part of the 20 cases of opium imported, and which was testified to have been the subject of the conspiracy alleged in the other indictment. There is a concession as to this as follows:

"The Court: Is this 102 pounds part of the 20 cases?

"Mr. Falk: Well, I do not say that it is part of the 102 pounds that came out of these 20 cases. I cannot, nor can any human being, state whether or not this particular opium ever came out of those cases."

There is no proof showing that the 102 pounds of opium, the subject of the Harrison Act indictment, did in point of fact, come from the 20 cases. The court, however, adhered to its ruling that the two cases be tried together. The following request to charge was made:

"At the request of the defendant De Luca I make this charge: Defendant De Luca requests the court to charge the jury that there is no evidence against the defendant De Luca, supporting the indictment under the Harrison Act or the sale of the 100 pounds of opium, except the testimony of William J. Sardo that on April 6th the defendant De Luca gave to him (Sardo) two bundles containing that opium. * * *

"Mr. Falk: I also request your honor to charge the jury that the jury may also infer from all other circumstances as to whether or not Morris De Luca had any other participation in that sale.

"The Court: I so charge.

"Mr. Cass: Exception."

The verdict was guilty for De Luca, both as to the conspiracy to import opium without paying the customs duty and of unlawfully selling opium. As to Pavlou he was found guilty of unlawfully selling, but acquitted of the conspiracy charge. An exception was taken to the granting of the motion for a severance, and this indicates that the plaintiff in error De Luca did not waive or otherwise divest himself of the right to attack the consolidation of the indictments. It was upon the theory that the application for consolidation was discretionary with the court, that the lower court granted the motion to consolidate. Section 1024 of the Revised Statutes (Comp. St. § 1690) provides:

"Where there are several charges against any person for the same act or transaction, or for two or more acts or transactions connected together, or for two or more acts or transactions of the same class of crimes or offenses, which may be properly joined, instead of having several indictments the whole may be joined in one indictment in separate counts; and if two or more indictments are found in such cases, the court may order them to be consolidated."

[1] Thus the statute permits the consolidation of indictments only when offenses might have been joined originally in separate counts. The effect of a consolidation of indictments is to render the consolidated indictments as one bill with as many counts as there are accusations. McElroy v. United States, 164 U. S. 76, 17 Sup. Ct. 31, 41 L. Ed. 355; Porter v. United States, 91 Fed. 494, 33 C. C. A. 652. The word "count" is made use of in the indictment where, in one finding by the grand jury, the essential parts of two or more separate indictments, for crimes apparently distinct, are combined. 1 Bishop's New

Crim. Proc. § 421. Where an accused is charged in a single bill with more than one count, it is the grand jury that consolidates the indictments; but, if separate bills are found, the court can do no more than was the privilege of the grand jury, for it has no greater power to consolidate. In the instant case the conspiracy indictment was against the plaintiffs in error and seven others. The indictment founded on the Harrison Act was against the plaintiffs in error and three others. Each indictment was against a definite group. Although it appears that certain of the defendants were members of both groups, others were not, and therefore the groups were distinct. The statute refers to several charges, which shall be against the same person, and when the charges are against more than one person, there can be no consolidation by the court, unless all the defendants are identical in all the indictments. In the McElroy Case, supra, a similar question was presented, and it was held that where several charges were made in four indictments, not against the same persons, and which were consolidated, the conviction after such consolidation could not be sustained. The court said:

"The several charges in the four indictments were not against the same persons, nor were they for the same act or transaction, nor for two or more acts or transactions connected together, and in our opinion they were not for two or more acts or transactions of the same class of crimes or offenses which might be properly joined, because they were substantive offenses, separate and distinct, complete in themselves, and independent of each other, committed at different times, and not provable by the same evidence. In cases of felony, the multiplication of distinct charges has been considered so objectionable, as tending to confound the accused in his defense, or to prejudice him as to his challenges, in the matter of being held out to be habitually criminal, in the distraction of the attention of the jury, or otherwise, that it is the settled rule in England and in many of our states to confine the indictment to one distinct offense or resrict the evidence to one transaction [citing cases]. Necessarily, where the accused is deprived of a substantial right by the action of the trial court, such action, having been properly objected to, is revisable on error. It is clear that the statute does not authorize the consolidation of indictments in such a way that some of the defendants may be tried at the same time with other defendants charged with a crime different from that for which all are tried; and, even if the defendants are the same in all the indictments consolidated, we do not think the statute authorizes the joinder of distinct felonies, not provable by the same evidence and in no sense resulting from the same series of acts. Under the third clause relating to several charges 'for two or more * * * transactions of the same class of crimes or offenses,' it is only when they 'may be properly joined' that the joinder is permitted; the statute thus leaving it for the court to determine whether in any given case a joinder of two or more offenses in one indictment against the same person 'is consistent with the settled principles of criminal law,' as stated in Pointer's Case."

[2] The effect of the severance in a conspiracy indictment was to grant separate trials to the defendants accused in that indictment. The defendants remained the same and the indictment remained unchanged. Assuming that a severance had been granted, as argued, as to both indictments, still it was error to grant the consolidation of the indictments. The statute makes the test what appears on the face of the bills themselves. It does not depend in any degree upon the order in which the prosecutor intends to bring the defendants to trial. Both indict-

ments charge crimes punishable by imprisonment for more than one year, and are therefore infamous crimes. Brede v. Powers, 263 U. S. 4, 44 Sup. Ct. 8, 68 L. Ed. ——; In re Classen, 140 U. S. 200, 11 Sup. Ct. 758, 35 L. Ed. 399. There were still accusations made against five defendants in one case and nine defendants in the other. Neither the court nor the government's attorney had the power to add anything to the indictment or to strike anything out of it. Ex parte Bain, 121 U. S. 1, 7 Sup. Ct. 781, 30 L. Ed. 849. The Fifth Amendment of the Constitution requires that the accusation should be that charged in the indictment as found by the grand jury. The only way it could be changed would be by resubmission to the grand jury.

[3] On the facts which are stated to constitute a crime in the indictment by the grand jury, these could not be consolidated in a single bill. It is a general rule that the counts for several felonies of the same general nature, requiring the same general punishment, may be joined in the same indictment, subject to the power of the court to quash the indictment or to compel an election; but such joinder cannot be sustained, where the parties are not the same, or where the offenses are in no wise parts of the same transaction, and must necessarily depend upon evidence of a different statement of facts as to each or some of them. Where different acts are provable by the same evidence, so that it is not possible to separate the proof of one from the proof of the other, they may be said to be connected. But there must be such connection in respect of time, place, and occasion that it would be difficult, if not impossible, to separate the proofs of one charge from the proofs of the other. Pointer v. United States, 151 U. S. 396, 14 Sup. Ct. 410, 38 L. Ed. 208.

[4] But in the instant case the evidence which proved the conspiracy did not prove the sale. The conspiracy charge was to defraud the United States of the import duties; the transaction in the other case was the sale of opium. One group of men was charged with conspiracy to defraud the United States customs duties, while the other was charged with the sale of a quantity of opium. As the trial progressed, it was argued by the defendant in error that the sale of the opium to some Chinaman was an overt act in furtherance of the conspiracy. But the conspiracy indictment does allege as overt acts the delivery of the opium, the subject of the sale under the Harrison Act indictment. However, the overt act must be one which tends to further the conspiracy. If not, it is not an overt act, no matter what it may be called. It is the character of the act which is the determining factor and classifies it. It is not the name which it may be called. The object of the conspiracy charge was obtained as soon as the opium was out of the bonded warehouse. It was then that the government's lien on the opium was gone. It had been defrauded, and the conspiracy was ended. No act can further the conspiracy which transpires after the end of the conspiracy. Feder v. United States, 257 Fed. 694, 168 C. C. A. 644, 5 A. L. R. 370; Lonabaugh v. United States, 179 Fed. 476, 103 C. C. A. 56.

This overt act of sale, as alleged and as pleaded in the indictment, was not in furtherance of the conspiracy to defraud the customs duties. Furthermore, it appears from the record that the sale of 102 pounds

of opium was wholly distinct and apart from the conspiracy. The 102 pounds which were sold as proven did not come from the 20 cases. We are satisfied that the two crimes were wholly distinct from each other. They were conceived and perpetrated at different times. While both groups of the defendants might be said to have a similar general purpose in view of trafficking unlawfully in narcotics, this does not justify the consolidation of the charges into one bill and a trial thereof at one time. The only exercise of discretion in permitting consolidation of indictments relates to those which could lawfully have been joined in separate counts in one indictment by the grand jury. The court's discretion is to determine whether the interest of justice will be furthered by consolidating such indictments; but where the accusations could not have been charged in one indictment by the grand jury, they cannot be consolidated by the court.

There are other errors assigned and argued, which we need not consider, because we deem the one referred to as fatal, and requiring reversal of the judgment of conviction.

Judgments reversed.