The People of the State of Illinois, Plaintiff in Error, v. Hiram L. Williamson et al., Defendants in Error.

**Gen. No. 8,871.**

Heard in this court at the October term, 1934. Opinion filed April 12, 1935.

OTTO KERNER, Attorney General, for plaintiff in error; J. J. NEIGER, Assistant Attorney General, A. H.

GREENING, State's Attorney, and T. W. HOOPES, Assistant State's Attorney, of counsel.

A. M. FITZGERALD and BROWN, HAY & STEPHENS, all of Springfield, for defendants in error; LOGAN HAY, L. W. ENSEL and CHARLES G. BRIGGLE, JR., all of Springfield, of counsel.

MR. PRESIDING JUSTICE FULTON delivered the opinion of the court.

This writ of error is sued out and prosecuted by the People of the State of Illinois to review the judgment of the circuit court of Sangamon county in quashing an indictment returned by the grand jury of said county at the November term, 1933.

Under an amendment to section 17 of Division XIII of the Criminal Code, Cahill's St. ch: 38, ¶ 770, passed by the General Assembly and approved July 6, 1933, the prosecution of such writ of error is permitted from a judgment quashing an indictment. In part such amendment reads as follows: ''The people may sue out writs of error to review any order or judgment quashing or setting aside an indictment or information.'' The circuit court of Sangamon county held that the indictment in this case was barred by the statute of limitations. The indictment returned on December 29, 1933, consisted of four counts and charges a conspiracy to defraud the State of Illinois.

The first count charges that the defendants in error on, to wit: the 20th day of February, A. D. 1931, unlawfully, wilfully and knowingly, feloniously, fraudulently and deceitfully, did conspire, combine and confederate together and with each other and with divers other persons, whose names are to the said grand jurors unknown, for the purpose of committing an illegal act in connection with the duties performed, and to be thereafter performed by the said Hiram L.

Williamson as superintendent of the Division of Printing, under the department of purchases and construction of the State of Illinois, and while the said Hiram L. Williamson was the duly appointed and acting superintendent of said Division of Printing; that is to say, for the purpose of wrongfully, wilfully and unlawfully diverting to and for the use benefit and advantage of the said Hiram L. Williamson a large amount of said printing, and the labor to be performed in connection therewith, which was then and there and thereafter under the jurisdiction, authority, control and power of the said Hiram L. Williamson as superintendent of the Division of Printing, and which lawfully could only be performed and furnished by persons, associations and corporations other than the said Hiram L. Williamson and which could not lawfully be performed and furnished by the said Hiram L. Williamson either directly or indirectly while he, the said Hiram L. Williamson, was superintendent of said Division of Printing of the State of Illinois, and thereby wrongfully, wilfully and unlawfully to divert and obtain from the State of Illinois for the use, benefit and advantage of the said Hiram L. Williamson a large amount of monies and funds belonging to the State of Illinois and thereby to cheat and defraud the said State of Illinois and taxpayers thereof out of large sums of money which would otherwise be used, and which lawfully could not be used, by the State for State purposes.

Thereupon the count alleges that the defendants, in order to accomplish the said conspiracy, committed the following overt acts:

1. On February 20, 1931, fraudulently caused to be issued by the said Hiram L. Williamson as superintendent of the Division of Printing, a voucher in the sum of $7,579.56 payable to Schnepp & Barnes, a corporation, for the alleged printing of 50,000 copies of a certain book known as the "Tourist Guide."

2. That the defendants in error fraudulently caused a State warrant to be issued by the auditor of public accounts of the State of Illinois for said amount of $7,579.56 payable to the said Schnepp & Barnes for the printing of the said alleged copies of the ''Tourist Guide.''

3. That the defendants in error caused the said State warrant for said sum of money to be paid to the said Schnepp & Barnes.

4. That the defendants in error on the 3rd day of August, 1931, fraudulently caused to be issued by the said Hiram L. Williamson as superintendent of said Division of Printing a voucher in the sum of $16,562.17 payable to Schnepp & Barnes, a corporation, for the alleged printing of 50,000 copies of a certain book known as the ''Tourist Guide.''

5. That the defendants in error fraudulently caused a State warrant to be issued by the auditor of public accounts of the State of Illinois for said amount of $16,562.17 payable to the said Schnepp & Barnes for the alleged printing of the said copies of the ''Tourist Guide.''

6. That the defendants in error fraudulently caused the said State warrant for the said sum of money to be paid to the said Schnepp & Barnes.

7. That the defendants in error on or about August 3, 1931, fraudulently caused to be issued by the said Hiram L. Williamson, as superintendent of the Division of Printing, a voucher in the sum of $10,112.18 payable to the Jefferson Printing & Stationery Co., a common law trust, composed of Andrew J. Barnes aforesaid and one Paul James (now deceased) for the alleged printing of 50,000 copies of a certain book known as the ''Tourist Guide.''

8. That the defendants in error fraudulently caused a State warrant to be issued by the auditor of public accounts of the State of Illinois for said amount of

$10,112.18 payable to the said Jefferson Printing & Stationery Co., for the printing of the said alleged copies of the "Tourist Guide."

9. That the defendants in error fraudulently caused the State warrant for said sum of money to be paid to the said Jefferson Printing & Stationery Co.

10. That the said defendants in error immediately after the payment of the said State warrants to the said Schnepp & Barnes and the said Jefferson Printing & Stationery Co. respectively, caused the said several amounts of money so paid by the State of Illinois by means of said State warrants to be paid and delivered to the said Hiram L. Williamson while he was the duly appointed and acting superintendent of said Division of Printing and thereby to be diverted from the monies and funds in the treasury of the State of Illinois for the use, benefit and advantage of the said Hiram L. Williamson.

11. That the defendants in error on or about the 4th day of April, 1932, and on divers other dates from April 4th, 1932, to and including February 1, 1933, fraudulently caused the last order for 50,000 copies of said "Tourist Guide" to be printed at the Hartman Printing Co., then and there owned by said Hiram L. Williamson.

12. That the defendants in error on April 4, 1932, and on divers other dates from April 4, 1932, to and including February 1, 1933, fraudulently caused the said 50,000 copies of said "Tourist Guide" to be delivered to the State of Illinois.

Said first count further charges that during all of the times aforesaid the defendants in error, and each of them, well knew that said Hiram L. Williamson as superintendent of said Division of Printing had no legal right or authority to cause the said "Tourist Guide" to be printed at the expense of the State or to have a personal or private interest in furnishing and

printing said "Tourist Giude" at the expense of the
State; that during all of the times aforesaid the de-
fendants in error well knew that the purpose of print-
ing said "Tourist Guide" at the expense of the State
of Illinois was to obtain from the treasury of the State
the said amount of monies aforesaid and to turn the
same over to the said Hiram L. Williamson and there-
by unlawfully enrich the said Hiram L. Williamson
to the great injury of the State of Illinois and the tax-
payers thereof; that the defendants in error pursuant
to the said conspiracy falsely claimed that the said
last mentioned "Tourist Guide" was printed by the
said Jefferson Printing & Stationery Co., in accord-
ance with a false and fraudulent order theretofore
issued to them by the said Hiram L. Williamson for
the printing of said 50,000 copies of said "Tourist
Guide," all in pursuance of said conspiracy and to
accomplish the object thereof.

The second count is substantially the same as the
first count, with an additional overt act alleged there-
in charging that on or about December 3, 1931, the de-
fendants in error unlawfully procured an alleged req-
uisition purporting to be signed and issued by Wil-
liam J. Stratton, secretary of state, for the purpose
of showing authority and approval for the printing
and furnishing of 50,000 copies of "Tourist Guide"
at the expense of the State of Illinois and that in pur-
suance of the conspiracy, the said requisition purports
to be approved by the said Hiram L. Williamson, su-
perintendent of said Division of Printing; and that
at the time the defendants in error well knew that the
said Schnepp & Barnes and the said Jefferson Print-
ing & Stationery Co. had theretofore received pay-
ment by means of State warrants issued to them, and
that the said several amounts had been immediately
turned over to the said Hiram L. Williamson.

The third count is also in all respects the same as
the first and second counts with additional overt acts

alleged therein charging that on January 20, 1931, the defendants in error unlawfully procured to be made and issued by the said Hiram L. Williamson, as superintendent of the Division of Printing, a written order directed to the Jefferson Printing & Stationery Co., purporting to give them authority to print 50,000 copies of "Tourist Guide" and purporting to require said printing company to use certain stock and material in the printing of said "Tourist Guide," all of which was State stock and furnished by the said Hiram L. Williamson, superintendent of the said Division of Printing; also procuring a similar written order on February 3, 1931, addressed to Schnepp & Barnes, and procuring a certain other similar order on December 12, 1932, addressed to Schnepp & Barnes. The count further alleged knowledge on the part of the defendants in error that the said orders were not genuine or bona fide and that said orders were signed for the purpose of defrauding the State of Illinois.

The fourth count is identical with the first, second and third counts down to and including the allegations with reference to the written orders above set forth and also containing additional overt acts charging that the defendants in error on or about February 1, 1931, unlawfully and fraudulently caused and procured 50,000 copies of the said "Tourist Guide" to be printed and labor performed in the establishment of the Hartman Printing Company of which the said Hiram L. Williamson was the sole owner and proprietor; that on February 28, 1932, and during the year 1932, the same charge; and that on or about January 1, 1931, the defendants in error caused the type for the printing of 50,000 copies of the said "Tourist Guide" to be set up in the establishment of the Hartman Printing Company owned by the said Hiram L. Williamson and then shipped to Schnepp & Barnes and used by them

in printing the 50,000 copies of the said "Tourist Guide" pursuant to the said conspiracy.

While other grounds were urged by defendants in error in support of their motion to quash, the motion was sustained by the court on the grounds that the indictment shows on its face that the overt acts therein charged are barred by the statute of limitations. The indictment was returned on December 29, 1933, and the period of limitations in this case was 18 months. The statute of limitations for conspiracy runs from the date of the last act in furtherance of the object of the conspiracy. Therefore the bar of the statute would not apply if any overt acts are alleged to have been committed after July 30, 1932.

It is the contention of the plaintiff in error that each count of the indictment charges overt acts to have been committed after said date and that the action is not barred.

The overt acts charged in the indictment upon which plaintiff in error relies particularly as having been committed after July 30, 1932, are:

1. That between the 4th day of April, 1932, and the 1st day of February, 1932, the defendants in error caused the last order for 50,000 copies of said "Tourist Guide" to be printed at the Hartman Printing Company then and there owned by said Hiram L. Williamson.

2. That between the said dates the defendants in error are charged with having delivered the said 50,000 copies of the "Tourist Guide" to the State of Illinois.

3. That the defendants in error on the 12th day of December, 1932, fraudulently caused to be issued a certain order from Hiram L. Williamson as superintendent of the Division of Printing, authorizing Schnepp & Barnes to print 50,000 copies of "Tourist Guide."

It is conceded that this indictment was brought under par. 117, ch. 38 of Cahill's Revised Statutes which makes it a criminal offense to conspire to do either of two things:

1.   To commit any offense against the State of Illinois.

2.   To defraud the State of Illinois.

The controlling question in this case therefore is, Do the three above mentioned acts or any one of them constitute an act to effect the object of the conspiracy or in furtherance thereof within the meaning of section 117 above?

Plaintiff in error urges that in carrying out the purpose and object of the conspiracy charge certain overt acts were committed by the defendants in error more than 18 months before the indictment was returned and certain other overt acts were committed in furtherance of the conspiracy during the period of limitation—in other words, that the conspiracy in this case was a continuous one so that a prosecution for the crime charged was not barred until 18 months after the commission of the last overt act alleged.

Section 117 of the Illinois statute now under discussion is copied verbatim from a federal statute which has been in existence since 1879.   U. S. Compiled Statutes 1901, page 376.   Therefore, counsel for both parties have discussed in detail decisions arising under the federal statute.

In Illinois a criminal prosecution for conspiracy is not barred if the statutory period has not elapsed since the commission of the last overt act in furtherance of the conspiracy.   *People v. Drury,* 335 Ill. 539; *People v. Walsh,* 322 Ill. 195.   The same rule has been adopted by the federal courts.   *Brown v. Elliott,* 225 U. S. 392; *Miller v. United States,* 277 Fed. 721.

But the defendants in error contend that neither the printing of the matter for the State of Illinois nor the

delivery of such printed matter to the State nor the issuing of an order to a certain printer requiring him to print certain matter for the State can be said to be acts tending to defraud the State of Illinois. It is their theory that the act of defrauding was completed when the money of the State was paid out and that therefore inasmuch as the last money had been paid over more than 18 months before the indictment was brought, that the same was barred by the statute of limitations. In support of this contention defendants in error rely largely upon the authority of the following federal cases: *Ex parte Black,* 147 Fed. 832; *De Luca v. United States,* 209 Fed. 741; and *Rose v. St. Clair,* 28 F. (2d) 189.

An examination of these cases shows that the facts are quite similar in character to the ones alleged in the indictment in this case. In *De Luca v. United States,* 299 Fed. 741, the defendants in error were indicted for a conspiracy to defraud the United States by removing cases of opium from a bonded warehouse without payment of the duty thereon. The proof showed evidence of the sales of the opium after it had been in some way or other removed from the warehouse without the payment of the government charges. The court reversed a decision of the trial court finding the defendants in error guilty under this indictment on the ground that the overt acts alleged and proved were not ''Acts done to effect the object of the conspiracy,'' as required by the statutes. In passing upon this question the court said, ''The overt act must be one which tends to further the conspiracy. If not it is not an overt act no matter what it may be called. It is the character of the act which is the determining factor and which clarifies it. It is not the name which it may be called.''

In *Rose v. St. Clair,* 28 F. (2d) 189, an affidavit for a search warrant alleged that the persons named therein

conspired to commit the offense against the United States of transporting films of prize fights in interstate commerce for the purpose of exhibition and that to effect the object of said conspiracy, advertised an exhibition of said prize fight films and exhibited them. The trial court held that these acts of advertising the exhibition of the films and the exhibition thereof did not constitute "Acts done to further the object of the conspiracy," and that therefore the affidavit did not properly charge a crime. The court held that the object of the conspiracy had been fully and completely effected when the interstate transportation of the films had been completed and that the subsequent exhibition of the films, while it was an act done to effect the ultimate purpose of the conspirators, could not have been an act done to effect the object of the conspiracy.

We have examined with some care the large number of Illinois and federal cases cited in the brief of plaintiff in error but we do not find any of them to have actually held that the running of the statute of limitations was barred by an act which occurred after the object of the conspiracy had been accomplished. In the case of *People v. Drury,* 335 Ill. 539, our Supreme Court said: "The conspiracy is complete when the unlawful combination or agreement is made, regardless of any subsequent interruption of the efforts to carry out the object of the conspiracy."

It is the judgment of this court that the object of the conspiracy alleged in the indictment in this case was the obtaining of money from the State of Illinois. All monies were paid over to the defendants in error more than 18 months prior to the date when the indictment was returned and the object of the conspiracy fully accomplished; that the printing of certain matter, the delivery of same and obtaining a certain order from the superintendent of printing authorizing cer-

tain printing to be done for the State of Illinois, while they might be acts done to effect the ultimate purpose of the conspirators, were not acts done to effect the object of the conspiracy and were not acts done to defraud the State of Illinois.

We, therefore, believe that the judgment of the court below in quashing the indictment and each count thereof is correct and that the same should be affirmed.

*Affirmed.*